BLANCHE F. PANZARELLA *vs.* UNITED STATES RUBBER COMPANY.

NOVEMBER 3, 1953.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Flynn, C. J.   This cause is before us on the respondent employer's appeal from a decree entered in the superior court granting the employee's original petition for compensation under the workmen's compensation act, general laws 1938, chapter 300.

The petitioner, who was twenty-eight years of age and the mother of six children, was employed by respondent as a coning operator on the third shift from 11 p.m. to 7 a.m. It appears in evidence that the work required her to reach out at shoulder height over the top of a machine, with her weight largely on one side, in order to set the bobbins in place, and also to bend two or three times a minute to about eight inches from the floor in replacing the cones.   In the process she operated from nine to fourteen spindles, as the machine wound rubber-covered thread from bobbins to the cones, and at all times she was required to stand.   The repair

of broken threads also involved considerable reaching, stooping and bending.

She testified that on April 16, 1951 in the course of her employment she reached out and over the machine to place a bobbin and felt a sudden, sharp pain in her left groin. She did not report the incident to anybody but went home, rested, and in the afternoon visited her family physician, Dr. Alexander F. Marzilli. He testified that he found a slight swelling in the left groin region and diagnosed it as an indirect left inguinal hernia resulting from strain which petitioner had suffered while at work on April 14. However, she returned and continued to work steadily until May 18, when the pain became sharp and extended down her leg. She again visited Dr. Marzilli because she found it almost impossible to stand. Prior to the incident of April 16 as she testified, or April 14, 1951, as her doctor stated, she had never suffered injury or pain in the region of her left groin.

She claims to have telephoned respondent's plant on May 21, 1951 that she would not report for work because of the pain from the injury to her left side. At any rate, a witness from respondent's personnel department admitted that on May 22 petitioner had reported she could not work because of a strain in the left groin caused by operating fourteen spindles in the coning department. As the result of a certificate from Dr. Marzilli and at the intervention of the union, respondent's employment record was changed from "Quit" to show her on "Leave of Absence" for two months. The swelling had disappeared and she returned July 18 and worked until August 9, 1951, when she was laid off because of lack of work and seniority rights of other employees. During that period the swelling in her left groin did not return, although she experienced some pain.

On August 20 respondent asked her to resume work in another department testing and later making rubber inflated mattresses. She continued for a few days at such work, which required considerable stretching and effort, and because of the increased pain in her left groin and leg she

complained to the foreman, again reporting her previous experience and injury. Following her claimed inability to work at that job she was examined on August 31, 1951 by respondent's physician, Dr. William S. Nerone, who was unable to find any swelling, hernia, or incapacity.

However, petitioner remained out of work from that date to the time of trial with the exception of about four weeks in the spring of 1952 when she was working in the coning department of the Atlantic Mills. In obtaining the latter job she was examined by another doctor who found no hernia or injury, and she made no report or complaint thereof to that doctor or to the company. For about four weeks she was able to perform regularly the work of a coning operator without complaint and was laid off merely because of lack of work, not because of her incapacity. But she explained that her work there was on another type of machine, requiring her to operate only ten spindles and was otherwise easier.

Her average wage was $56.55 per week while working in respondent's coning department and $31.86 while working in the Atlantic Mills. She claims to have attempted to obtain other light work at various places which would permit her to sit down but was unsuccessful, and respondent admittedly had offered no such employment.

The trial justice, after reviewing the testimony of petitioner and several examining physicians, pointed out the conflict in the medical evidence and found that petitioner had sustained a strain in her left groin region "on or about April 16, 1951" arising out of and in the course of her employment; that such strain "slowly developed into a small inguinal hernia"; and that the hernia "was an occupational hernia as defined in *Chapter 300, Article VIII, Section 27* [obviously meaning §2, item 27], *General Laws of Rhode Island, 1938, as amended*." He accordingly awarded compensation for total incapacity from May 22 to July 18, 1951 inclusive; compensation for partial incapacity commencing August 31, 1951, but not more than $18 per week and

subject to being reduced by her future earnings if any; and reasonable medical expenses under the provisions of the act.

From a decree based on such findings respondent has taken the instant appeal containing twenty-eight separate reasons thereof. However, these are argued generally under nine points which we have considered and will treat only so far as they appear to require discussion. Under the first and second points respondent contends substantially that there is no evidence to support findings numbered I, II, III, and IV of the decree to the effect that petitioner suffered an occupational hernia and gave timely notice thereof in accordance with the provisions of the act. It is contended that the trial justice did not find all the elements which are necessary to constitute an occupational hernia as defined in the act, and that if his general finding is held to be sufficient in that respect there is still no evidence to support the finding that the hernia developed from strain of recent origin and was promptly reported.

In this argument respondent first disposes of the testimony of all the examining doctors, apart from Dr. Marzilli, by showing that none of them actually established all the necessary elements for an occupational disabling hernia under the act. Doctor Marzilli's testimony is then ruled out on the ground that the trial justice found a *direct* hernia, as described by Dr. Edmund B. Curran, which was different from the *indirect* hernia resulting from strain as testified to by Dr. Marzilli. It is also claimed that in stating that Dr. Curran testified such hernia had slowly developed from a *strain,* the trial justice misconceived the evidence, since the doctor had testified that the original episode, from which the hernia slowly developed, was due to a separation of the transversalis fascia and not to a strain.

In our judgment this argument is based on a weighing of the evidence rather than on the absence of legal evidence to support the findings under consideration. It is true that art. VIII, §2, item 27, of the act describes an occupational hernia as follows: "Hernia, clearly recent in

origin and resulting from a strain, arising out of and in the course of employment and promptly reported to the employer." Further it appears that none of the other examining doctors, including an impartial examiner, was able to find a specific hernia as testified to by Dr. Marzilli, although their examinations were made later between August and November 1951. Moreover, Dr. Curran, who in May 1952 found a hernia, described it as a direct inguinal hernia having an initial episode that may differ technically from the strain as Dr. Marzilli testified. However that may be, the fact remains that Dr. Marzilli's testimony, which also was referred to in the decision, directly attributed petitioner's left inguinal hernia to a strain sustained by her while at her usual work on April 14, 1951. This injury was admittedly reported at the latest by May 22, 1951 and there is testimony by the impartial examiner that a hernia such as was found by Dr. Marzilli may disappear under certain conditions so as not to be palpated.

In our opinion the trial justice did not misconceive the evidence but at most only misstated the source of the pertinent testimony on which he could and did rely to base his finding as to the existence of the hernia resulting from strain. If the injury relied on were an accidental hernia respondent's argument as to notice might have some force. But under art. VIII, §9, of the act, notice of an occupational hernia may be given within ninety days of disablement therefrom. Consequently the notice of petitioner's injury and incapacity given to respondent on May 22 was timely. There being legal evidence to support the findings of the decree as to all essential elements of an occupational hernia, such findings are conclusive under the act. The weight thereof was for the trial justice and not for this court.

The respondent's third point is that the trial justice failed to apply the correct rule of law as to the burden of proof and in support thereof it cites certain language in the decision. There the trial justice stated among other things that the strain complained of "could have come as easily

from her housework as from her coning job but upon all the evidence in the case the Court is obliged to find and does find that she received a strain in the left groin on or about April 16, 1951, arising out of and in the course of her employment in respondent's plant." From this excerpt respondent argues that the trial justice felt he was required to find for petitioner, thus reflecting the same erroneous conception of the burden of proof which was pointed out in *Campbell* v. *Walsh-Kaiser Co.,* 72 R. I. 358. We do not agree with this interpretation. The trial justice in that part of the decision evidently conceded merely the *possibility* that such strain *could* come from housework but in the absence of any such proof and because there was direct testimony that the hernia resulted from an occupational strain, he felt obliged on all the evidence to find for petitioner. In these circumstances the obligation he referred to came from consideration of the evidence and is different from the error as to the law and burden of proof referred to in the *Campbell* case. In our opinion the trial justice did not misconceive the rule relating to the burden of proof.

The respondent next contends that there was a fatal variance between the proof of the occupational hernia and the allegations of the petition as amended, wherein the injury was alleged to have occurred April 14, 1951 while petitioner "in the performance of her duties received strain in groin region radiating down her leg and a recurrence thereof on or about August 23, 1951." Unless we hold that a petition must *specifically* allege a hernia resulting from strain of recent origin in order to support proof of an occupational hernia under the act, there is no variance. The complaint of the petitioner as to her injury, the notice thereof given to respondent, and her testimony, all related to a "left inguinal strain radiating down leg, injury to groin region," as described in the petition as filed and amended, and the testimony of her doctor referred to an indirect left inguinal hernia resulting from strain.

Doctor Marzilli's testimony, corroborated to a large extent

by Dr. Curran, brings the injury precisely and necessarily within the limits of that description. No confusion or surprise was claimed. It may well be reasonable and desirable that the notice and petition should specifically describe the type of hernia if that is the known cause of incapacity. But the act requires a liberal construction to achieve its purposes and it would not be a liberal construction thereof to hold that this inguinal hernia, which necessarily from the evidence was located within the left groin region and nowhere else, was nevertheless at variance with the general description of the injury appearing in the petition. On a proper interpretation of the act and evidence we are of the opinion that there is no variance.

The respondent further contends that petitioner had the burden of proving with reasonable definiteness the extent of her partial incapacity; that no such proof was made; and that for this and other reasons the decree is erroneous under *Wareham* v. *United States Rubber Co.*, 73 R. I. 207. The petitioner in reply urges that the *Wareham* case is not in point because the statute has been amended by public laws 1950, chapter 2628, apparently to correct the defect pointed out in that case; that under such amendment the trial justice may now fix the dollar value, up to $18 per week, of a petitioner's partial incapacity in cases where the employee is able to do some work but is unable to obtain work within his ability in order to ascertain the actual extent of his present earning capacity; and that the trial justice in awarding the petitioner here $18 per week, subject to being diminished by future earnings, impliedly fixed the dollar value of her partial incapacity in accordance with the amendment.

In our opinion the trial justice either misconceived or overlooked material evidence, or he misapplied the law under this amendment. If he were following the *Wareham* case, he was in error because here there was evidence from which petitioner's partial incapacity could be established. In the *Wareham* case there was no such evidence.

On the other hand, if it were possible to view the award of $18 per week as implicitly fixing the dollar value of petitioner's present incapacity in accordance with the statute as amended since the *Wareham* case, there is no such specific finding and no legal evidence to support it. Under that amendment, where partial incapacity is found and no suitable work is offered or available to the employee in order to establish the extent thereof, the trial justice may estimate the dollar value of the employee's present earning capacity in order to make a proper award of partial compensation until the extent thereof can be established. But when applying such amendment the trial justice should make all the findings of fact necessary to show the grounds for a reasonable estimate and such findings should be related to the evidence.

In the instant case no findings and no evidence of this nature appear and no reference to the statute was made. The only pertinent evidence is undisputed and shows that petitioner was able to work and had worked regularly for some four weeks in the Atlantic Mills as a coning operator at a somewhat lighter type of work; that her employment there had no bad effect on her physical welfare; that she did not stop work because of her injury but because of the mill's lack of business; and that during that period, while the mill was on part time, her average wages were $31.86 per week.

In the view of the trial justice perhaps this may have fallen short of proving a restoration of full earning capacity, but such uncontradicted evidence could not be ignored as showing her ability to earn at least an average of $31.86 per week in lighter work resembling her usual occupation. Consequently, if the evidence most favorable to her were properly applied under the amendment, the maximum award of partial compensation would be $14.81 per week, that amount being 60 per cent of the difference between the average weekly wages earned before and after the injury.

The decree therefore is erroneous as to the amount of the

compensation awarded and should be modified so as not to exceed $14.81 per week until altered in accordance with the act. Other questions involving matters not relied on by the trial justice in his findings have been argued but in our opinion they are not necessarily at variance with the findings in the decree. On the existing record the pertinent findings therein being supported by legal evidence are conclusive under the act.

The respondent's appeal is sustained in part, the decree appealed from is modified as above indicated, otherwise it is affirmed, and the cause is remanded to the superior court for the entry of a decree in accordance with this opinion.

*Kirshenbaum & Kirshenbaum, Samuel W. Weintraub,* for petitioner.

*Ambrose W. Carroll,* for respondent.

