264 A.2d 905.

LOUIS V. SACCOCCIO *vs.* KAISER ALUMINUM & CHEMICAL CORPORATION.

APRIL 27, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

54

JOSLIN, J. The employee filed this original petition for compensation benefits with the Workmen's Compensation Commission on August 29, 1968, after he and his employer failed to reach an agreement in regard to compensation. The trial commissioner found that the employee had sustained a compensable injury and awarded him benefits for total incapacity from August 5, 1968 to October 25, 1968, except for the period from August 7, 1968 to August

27, 1968, and for partial incapacity from and after October 26, 1968. The benefits for the period from August 7 to August 27, 1968 were suspended and forfeited because of the employee's refusal to submit to medical examinations scheduled by the employer for August 7 and August 27, 1968. Both parties appealed. The full commission lifted the penalty imposed by the trial commissioner and affirmed his decree in all other respects. The employer appeals.

The facts may be briefly stated. The employee was employed as a millwright. On July 25, 1968, while lifting an extruder screw on a vector machine he felt a sharp pain in the small of his back. He reported the incident to the plant nurse and on her advice consulted the plant physician who limited him to light duty. He continued at light work until August 2nd, when the employer's establishment closed for its annual two-weeks summer vacation period. A few days after the start of the vacation the employee told the plant physician that his condition was getting worse, that his leg as well as his back was affected, and that he was unable to do any work.

When his condition did not improve the employee consulted an orthopedic surgeon of his own selection and advised him about his earlier injury and the continuing pain, discomfort and limitation of movement he was experiencing. Based upon the case history and the observable symptoms, the orthopedist found a causal relationship between the injury described and the employee's physical limitations and difficulties. His provisional or tentative diagnosis was a lumbosacral strain, and he prescribed analgesics, bed rest, physiotherapy and a back support. When this conservative regime failed to produce improvement, the employee was hospitalized on September 24, 1968. After a myelogram was performed, his injury was rediagnosed as a herniated lumbar disk, and he was placed on

bed rest, pelvic traction, medication, and physical therapy. He left the hospital on October 10, 1968 and by October 25, 1968, his condition had improved sufficiently so that his physician discharged him and advised him to seek light work. This is the sum of the material evidence upon which the commission predicated its award of compensation for total and partial incapacity.

The employer challenges the award on several grounds. The first challenge relates to the employee's failure to keep the appointments for the medical examinations arranged[1] for him by the employer for August 7, 1968, August 27, 1968 and September 24, 1968. The September appointment was with a Providence physician, but the August examinations were scheduled to be made by a physician whose office was located in Fall River, Massachusetts, a city about 17 miles from the City of Cranston where the employee resides.

Because the employee failed to keep any of the appointments, the employer invoked §28-33-38[2] and demanded that the employee's rights to compensation benefits be suspended or forfeited for the period of his refusal. The commission declined to suspend or forfeit. It hinged the right to apply the statutory penalties on whether the request to submit was reasonable, and it found that this employee

---

[1]The arrangements were made pursuant to G. L. 1956, §28-33-34, as amended by P. L. 1963, chap. 127, sec. 1, which in pertinent part provides that an

"* * * employee shall, after an injury. at reasonable times during the continuance of his disability, if so requested by his employer. submit himself to an examination by a physician, furnished and paid for by the employer."

[2]Section 28-33-38 reads:

"If any employee refuses to submit himself for any examination provided for in chapters 29 to 38, inclusive, of this title, or in any way obstructs any such examination, his rights to compensation shall be suspended and his compensation during such period of suspension may be forfeited."

had not acted unreasonably or wilfully in refusing to submit to the out-of-state examinations[3] or to keep the instate appointment which by chance fell on the day he was admitted to the hospital.

We agree with the commission that the employee's refusals were excusable, but do not pass upon the reasons it gave for its conclusion. The decisive issue for us is whether an employer who has denied liability may require an injured employee to submit himself to a §28-33-34 medical examination while the liability question is still pending. We think not.

The precise question is one of first impression for us. Our decisions in related matters in the compensation field suggest, however, that the right to assert otherwise available benefits may be lost to an employer who has either defaulted in his obligation to make payments legally due under the Act or forced his employee to the burden of establishing a compensable injury by reason of his failure to enter into an agreement with regard to compensation. *Hingeco Mfg. Co.* v. *Haglund,* 65 R. I. 218, 14 A.2d 233; *Bishop* v. *Frank Morrow Co.,* 68 R. I. 518, 30 A.2d 110; *Proulx* v. *French Worsted Co.,* 98 R. I. 114, 199 A.2d 901.

A brief reference to the holdings in the cited cases demonstrates their appositeness. In *Hingeco* an employer in default of his obligation to make compensation payments legally due was not permitted to invoke the forfeiture provisions of what is now §28-33-38 against an employee who during the period of the employer's default had refused to submit to a requested medical examination. The *Bishop*

---

[3]It is to be observed that §28-33-34, although specifically requiring that the *time* scheduled for a medical examination be *reasonable,* is silent about whether the *place* designated must also be reasonable, and that in this respect §28-33-34 differs from comparable statutes in other states which provide that the *time* as well as the *place* fixed for a medical examination shall be *reasonable.* Baldwin's Indiana Statutes Sec. 16403; 3B Annot. Code of Maryland art. 101, sec. 42; N. J. S. A. 34:15-19 (1959).

case barred an employer who had not admitted liability for compensation from challenging the reasonableness of the actions of a claimant who, pending a determination of the liability question, had not undergone potentially beneficial operative treatment; *Proulx* involved an employee's claim for reimbursement for medical expenses. Two of the four justices who sat in that case (Joslin and Roberts, JJ.) said that an employer who denied liability was precluded from defending on the ground that the attending physician and the hospital whose services were rendered while the liability question was open had not complied with the notice and periodic medical progress report provisions of §28-33-8.[4]

These decisions, it is to be conceded, do not establish that an employer who denies liability for an injury later established to be work connected is thereby deemed to have waived every right which he might have asserted had he entered into an agreement to pay compensation. They do, however, evidence a tendency to look with disfavor upon an employer, who, despite his own failure either to enter into or to comply with his obligations under an agreement, attempts to invoke and receive affirmative assistance to his own advantage out of the failures of his employee or from the neglect of that employee's hospital or physician to do things required of them under the Act.

At the root of *Hingeco* was the court's judgment that

---

[4]General Laws 1956, §28-33-8 as amended by P. L. 1960, chap. 128. sec. 1, provides in pertinent part that:

"No claim for care or treatment by a physician, dentist or hospital chosen by an employee shall be valid and enforceable as against his employer, the employer's insurer or the employee, unless the physician, dentist or hospital gives written notice of the employee's choice to the employer within fifteen (15) days after the beginning of the services or treatment and shall as often as every two (2) months thereafter while the services or treatment continue in writing present to the employer a signed progress report of the employee's condition and a bill for services to date * * *."

to permit an employer, purely on his own volition, to deny an injured worker the weekly compensation upon which he was greatly dependent and concurrently to invoke provisions of the Act beneficial to employers would defeat the purposes and intent of the compensation legislation. *Hingeco,* to be sure, concerned an employer who was in default of his obligations under a preliminary agreement whereas *Bishop* and *Proulx* both involved employers who had refused to agree with their employees with respect to compensation and thereby had disclaimed any responsibility under the Act. The underlying rationale of *Bishop* and *Proulx,* however, is no different from that in *Hingeco.* Although unarticulated, the application of the doctrine of waiver in each of those cases turned on the inequity which results where an employer denies the Act's applicability, and yet at the same time claims the benefits of its provisions.

The facts of this case make it a corollary to, and not an extension of, the earlier cases. Just as in each of those cases an employer's inconsistent position barred his resort to advantageous sections of the Act, so too in this case the employer's incompatible points of view preclude him from invoking the forfeiture provisions of §28-33-38. To hold otherwise would permit this employer to benefit from its employee's refusal to submit to a requested medical examination, even though both the request and the refusal occurred at times when the employer by disclaiming liability was insisting that the Act was inapplicable.[5]

The employer also argues that the employee failed to prove that his injury arose out of and in the course of his employment. That argument completely ignores the at-

---

[5]It should be observed that the rationale of those decisions would not apply to an employer who, notwithstanding his disclaimer of liability, had entered into a nonprejudicial agreement with his employee pursuant to G. L. 1956 (1968 Reenactment) §28-35-8.

tending physician's unequivocal conclusion that the employee's disabling back condition was causally related to the injury which the employee sustained on July 25, 1968. That evidence was competent, and it was uncontradicted; it was the basis for the commission's finding that the employee had sustained a work-connected incapacitating injury; and a finding so predicated, absent fraud, is binding upon us.

A further contention of the employer is that it was error for the trial commissioner to grant the employee's motion for leave to amend his petition for compensation so that it would give the date of the alleged injury as "July 25, 1968," rather than "on or about July 24, 1968." That motion was made almost at the conclusion of the hearing before the trial commissioner; it was addressed to the trial commissioner's sound judicial discretion; and authority to act upon it came from the legislature.[6] A review of the record makes clear that the amendment did not substitute a new or different ground for relief, but merely brought the petition as originally filed into line with and made it conform to the evidence already adduced. Moreover, when the employee moved for leave to amend, the employer did not express surprise or request a continuance so that it might present additional evidence to meet the changed date. Neither did it then, nor does it now, claim that permission to amend in any way prejudiced it. In these circumstances it is impossible to say that the employer has satisfied its burden of making it clearly appear that the trial commissioner in granting the motion either abused or improperly exercised his discretion. *McVeigh* v. *McCullough,* 96 R. I. 412, 192 A.2d 437; *Smith* v. *Golden,* 92 R. I.

---

[6] General Laws 1956, §28-35-17 in pertinent part permits the commission to "* * * allow amendments to the petition and the answer at any state of the proceedings."

446, 169 A.2d 912; *Ringuette* v. *Superior Court*, 88 R. I. 218, 145 A.2d 359.

Finally, the employer contends that under our law compensation benefits are payable only for a loss of earning capacity. Relating that settled principle to the facts of this case, it then contends that the employee who admittedly was able to return to light work after October 25, 1968 did not meet his burden of establishing that his earning capacity was adversely affected by the partial disability from which he concededly has since continued to suffer. Without such evidence, the argument concludes, the commission had nothing upon which to rest its award that compensation benefits for partial incapacity should be paid from October 26, 1968, "* * * in accordance with the provisions of G. L. 1956, sec. 28-33-18, but not more than $22.00 per week." We agree. *Panzarella* v. *United States Rubber Co.*, 81 R. I. 149, 157-58, 99 A.2d 860, 863-64; *Wareham* v. *United States Rubber Co.*, 73 R. I. 207, 213, 54 A.2d 372, 375.

In this case the record contains no evidence of any job experience at light work or any other evidence which even remotely shows with reasonable definiteness how and to what extent the employee's inability to do anything but light work adversely impaired his earning capacity. Neither does it contain an evidentiary basis upon which the commission could have fixed the dollar value of the employee's weekly earning capacity.[7] Instead, with respect

---

[7] The commission's authority to fix the dollar value of an employee's weekly earning capacity as well as the circumstances under which that power may be exercised, is found in the first proviso of G. L. 1956, §28-33-18 which reads:

"* * * provided, however, if, after his injury, the employee is unable to obtain any work to determine his earning capacity or to prove the amount of his loss of earning capacity with reasonable definiteness, then the workmen's compensation commission shall have the power in the interest of justice to fix the dollar value of the weekly earning capacity

to these matters the record discloses only that on October 25, 1968, the employee was told by his physician that he could return to light work, and that on November 15, 1968, three days before the first day of the hearing on this petition, he sought light work from the employer and was told that there was none available. A record so devoid of any competent evidence on the vital issue of how the employee's disability affected his earning capacity lacks the prerequisite evidentiary basis for a proper award for compensation for partial incapacity.[8] The case must therefore be sent back for a hearing and finding on the extent of the employee's diminished earning capacity. *Catoia* v. *Eastern Concrete Products Co.*, 84 R. I. 402, 406-07, 124 A.2d 864, 866-67.

The respondent's appeal is sustained in part, the decree appealed from is affirmed except as to the finding awarding the petitioner compensation for partial incapacity "* * * in accordance with G. L. 1956, sec. 28-33-18, but not more than $22.00 per week," which is reversed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings in accordance with

which said employee has, which dollar value shall be reasonable, having due regard to the evidence and all other pertinent factors presented at the hearing. In such latter case the employer shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages, earnings or salary before the injury and said estimated dollar value of weekly earning capacity, but said employee shall not receive as partial disability compensation more than twenty-two dollars ($22.00) per week * * *."

[8] It could, of course, be urged that the commission fixed the employee's weekly earning capacity by applying the minimum hourly rate of pay prescribed by law to a 40-hour-work week, but there is nothing in the commission's decision to suggest that this was the measuring stick used in awarding weekly benefits for partial incapacity.

this opinion and to enable the petitioner to establish a diminished earning capacity.

*Raul L. Lovett,* for petitioner.

*Ambrose W. Carroll,* for respondent.