283 A.2d 272.

VICTORIA BANASIK *vs.* TUPPER COMPANY, *Division of Tupperware.*

NOVEMBER 2, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This petition for review was brought by an employee who on August 8, 1963 sustained a compensable injury which resulted in the amputation of her right hand at the wrist. The parties, along with the respondent's insurer, promptly entered into a preliminary agreement pursuant to which the employee was paid weekly compensation benefits commencing as of the date of her injury and continuing until November of 1967 when she returned to work. Thereupon she and her employer entered into a suspension agreement. Conformably thereto the payment

of weekly benefits was discontinued. Her employment lasted until August 30, 1968, when she quit her job on the advice of Dr. Max Brandt, her attending physician. In his judgment she then was, and has since been, unable to work by reason of a supervening mental illness attributable solely to her original injury. Notwithstanding, the employer refused both to resume payment of weekly benefits and to pay for the treatment she continued to receive from Dr. Brandt. Those refusals provoked the commencement of these proceedings on April 15, 1969.

The employee was only partially successful before the trial commissioner. Although he ordered the employer to resume paying weekly benefits for total incapacity as of the day she stopped working, he granted only a portion of her claim for medical treatment. Both she and her employer then appealed to the full commission. The employee claimed that it was error to reject any portion of her claim for medical treatment; the employer argued that the trial commissioner erred in finding her totally incapacitated. The full commission affirmed the trial commissioner's findings of fact and orders. Only the employee has appealed to this court, and the only problem before us, therefore, is the claim for medical services.

Dr. Brandt, a psychiatrist, has been the employee's regular physician since December of 1966. While he billed monthly for his services, he has been paid only for those performed through October 31, 1968. His bill for that month was paid in November of 1968, and at the time of that payment the employer's insurer told him that payment for any further services would not be "voluntarily" made. That threat or promise was kept, and when the doctor deposed in these proceedings on March 31, 1970, the balance then due for his medical services from November 1, 1968 through March 30, 1970 totalled $6,405.

Resolving in the employee's favor the evidentiary con-

flicts concerning Dr. Brandt's services, the necessity therefore and their causal relationship to the employee's incapacity, the commission found that those services were necessary in order to cure, rehabilitate, and relieve the employee from the effects of her injury of August 8, 1963. What remained for the commission to decide was whether the employer could avoid responsibility for payment for Dr. Brandt's medical services by reason of his failure to comply with G. L. 1956 (1968 Reenactment) §28-33-8.[1] That section, in substance and insofar as here pertinent, provides that a physician's claim for services furnished an employee shall be invalid and unenforceable unless he furnishes the employer with a written progress report of his patient's condition as often as every two months.

The employer's claim that §28-33-8 provides it with an escape hatch is based on the commission's factual determination that the only progress reports Dr. Brandt submitted during the period November 1, 1968 to March 30, 1970, were those of November 27, 1968, December 4, 1968, March 20, 1969 and April 28, 1969. Based upon that record the commission found as a matter of law that the only treatment periods covered by those reports extended from November 1, 1968 through February 4, 1969, and from March 20, 1969 through April 28, 1969. Accordingly, and after the Medical Advisory Committee had approved the reasonableness of Dr. Brandt's charges of $2,610 for the

---

[1]So much of §28-33-8 as relates to this case provides that:

"No claim for care or treatment by a physician, dentist or hospital chosen by an employee shall be valid and enforceable as against his employer, the employer's insurer or the employee, unless the physician, dentist or hospital gives written notice of the employee's choice to the employer within fifteen (15) days after the beginning of the services or treatment and shall as often as every two (2) months thereafter while the services or treatment continue in writing present to the employer a signed progress report of the employee's condition and a bill for services to date * * *."

services rendered during those periods, the commission found that the employer's only responsibility was for that amount, and that Dr. Brandt, solely because of his failure to supply the bimonthly progress reports called for in §28-33-8, was precluded from recovering for the services furnished from February 4, 1969 to March 20, 1969, as well as for those provided subsequent to April 28, 1969. In our judgment this was error.

In *Saccoccio* v. *Kaiser Aluminum & Chemical Corp.*, 107 R. I. 53, 264 A.2d 905 (1970) we reviewed several of our cases[2] which discuss the effect of an employer's denial of liability or its refusal to agree with its employee with respect to compensation upon that employer's right to invoke forfeiture provisions against its employee for his failure to comply with some other provision of the Act. In that discussion we observed that this court's tendency had been "* * * to look with disfavor upon an employer, who, despite his own failure either to enter into or to comply with his obligations under an agreement, attempts to invoke and receive affirmative assistance to his own advantage out of the failures of his employee *or from the neglect of that employee's hospital or physician to do things required of them under the Act.*" *Id.* at 58, 264 A.2d at 908 (emphasis supplied).

It is to be conceded that neither *Saccoccio* nor any of the cases upon which it is bottomed is on all fours with this case. Nonetheless, it is apparent from a close reading of those decisions that at the root of each is the judgment that it would be unjust to permit an employer to benefit from some failure of the employee or neglect of his physician when at the same time that employer refuses to agree with its employee with respect to compensation benefits

---

[2]*Proulx* v. *French Worsted Co.*, 98 R. I. 114, 199 A.2d 901 (1964); *Bishop* v. *Frank Morrow Co.*, 68 R. I. 518, 30 A.2d 110 (1943); *Hingeco Mfg. Co.* v. *Haglund*, 65 R. I. 218, 14 A.2d 233 (1940).

and forces him to suit. In those circumstances the employer's refusal to agree with its employee with respect to such benefits can be equated with a disclaimer of responsibility. *Saccoccio* v. *Kaiser Aluminum & Chemical Corp.*, *supra* at 59, 264 A.2d at 908. That principle, although not necessarily universal, applies no less in this case than it did in our earlier cases.

Here, to be sure, the employer originally recognized its legal liability to pay compensation benefits when in August of 1963 it entered into a preliminary agreement with the employee pursuant to which it paid weekly compensation and provided medical care. Thereafter, however, when the employee was forced to leave her employment because of a supervening mental illness directly traceable to her original injury, the employer, while it may not have specifically denied liability, did refuse, either by agreement or otherwise, to pay her weekly benefits. In addition, it unequivocally stated that it would not "voluntarily" pay Dr. Brandt for his future services.

Faced with the employer's attitude, the employee's only recourse was to commence legal proceedings. Now that her right to be paid compensation benefits has been established, it would be unfair to permit the employer to defeat the claim for the unpaid medical services on the ground that the employee's physician neglected to file progress reports. It is immaterial whether the employer's refusal to agree or its disclaimer of liability preceded or followed the payment of any benefits. In either event it assumed the risk that, if the injury proved to be compensable, a refusal would preclude it from avoiding payment for medical services because of Dr. Brandt's failure to furnish progress reports.

The commission, as we read its decision and decree, has already found that the medical services furnished to the employee during the contested periods were required in

order to cure, rehabilitate or relieve her from the effects of her compensable injury. There has been no finding, however, on whether the charges therefor were reasonable. The case must therefore be sent back for a resolution of that question as well as for such other factual determinations as may be required in order to fix the extent of the employer's responsibility for Dr. Brandt's unpaid medical services. *Saccoccio* v. *Kaiser Aluminum & Chemical Corp.*, *supra* at 62, 264 A.2d at 910; *Catoia* v. *Eastern Concrete Products Co.*, 84 R. I. 402, 406-07, 124 A.2d 864, 866-67 (1956).

The employee's appeal is sustained and the decree appealed from is reversed. Jurisdiction is retained in order to afford the employee's counsel a reasonable time within which to apply for an appropriate counsel fee for the services rendered in this court. Thereafter, the case will be remanded to the Workmen's Compensation Commission for further proceedings consistent with this opinion.

*Pearlman & Pearlman, Alan H. Pearlman,* for petitioner.

*Worrell* and *Hodge, Eldridge H. Henning, Jr.,* for respondent.