COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

John Paul PORTER et al., Appellees.

Court of Appeals of Kentucky.

June 25, 1971.

Don Duff, Dept. of Highways, Frankfort, Lewis D. Jones, Flemingsburg, for appellant.

Stanley R. Hogg, Creech & Hogg, Ashland, for appellees.

REED, Judge.

In this workmen's compensation case two questions for decision are presented. The first is whether the Workmen's Compensation Board properly allowed recovery of medical expenses from the employer in excess of the stated statutory maximum that applies generally. The second is whether the Board erred in determining the extent of the injured employee's disability to be 75 percent permanent partial rather than permanent and total. The circuit court upon appeal and cross-appeal by the affected parties, employer and employee, upheld the Board's disposition of the contested issues. The employer then appealed to this court on the medical expense issue and the employee cross-appealed on the ground that the Board should have been directed to determine the extent of his disability to be total and permanent. We affirm the circuit court.

The injured employee, Porter, a 29-year-old heavy equipment operator for the employer, Department of Highways, suffered a severe injury to his right elbow and damage to his right wrist and arm while operating heavy machinery during the course of his work. He was removed from the accident scene to a hospital in Ashland, Kentucky, where he was immediately attended by an orthopedic surgeon, Dr. John S. Ashworth, a member of the staff of the hospital.

Dr. Ashworth operated on Porter and placed a pin at the elbow point. Porter had been admitted to the hospital on April 4, 1968, and was discharged April 26, 1968. His elbow remained in an unsatisfactory condition; in August 1968, Dr. Ashworth referred Porter to a surgeon practicing in Grand Rapids, Michigan, to secure performance of a relatively new surgical technique for the purpose of implanting silicone rubber into the injured right elbow. This operation procedure had been developed by the Michigan surgeon and was not available for general use by practitioners in Kentucky at the time. There is evidence that this surgical procedure has been used in Kentucky on later occasions.

In October 1968, the new surgical procedure was performed by the Michigan surgeon, but it did not accomplish the desired results. Another silicone rubber implant operation was performed by the Michigan surgeon at a hospital in Grand Rapids in January 1969. While Porter was hospitalized in Michigan for his third operation, he learned for the first time that his employer had notified Dr. Ashworth that it would not pay any out-of-state treatment expenses. In August 1969, Dr. Ashworth, in Kentucky, performed another surgical procedure upon plaintiff's elbow.

The medical evidence is contradictory concerning the extent of Porter's occupational disability. One of the physicians testified that in his opinion Porter would never be able to return to heavy manual labor. The Kentucky treating physician, however, stated that, in his opinion, Porter was in such physical condition that his return to heavy manual labor could be expected in a relatively brief time.

The determination of the extent of occupational disability is within the province of the Board. We cannot say that the evidence adduced by Porter was so strong and compelling that it was clearly unreasonable for the Board to make its determination that he was 75 percent permanently partially disabled rather than that he was permanently and totally disabled. The question is not what we would have determined; the compelling character of the plaintiff's evidence to the Board is the determinant on judicial review. Hence, we are unable to disturb the Board's determination in this respect.

The employer's contention concerning the payment of medical expenses presents

an important issue, but the factual context in which it is here presented is narrowly confined. Thus, our determination of this aspect of the case must be recognized as strictly limited to the factual and legal situation presented by this case.

It was stipulated at the time of the hearing of Porter's compensation claim that the employer had up to that time expended $1807.65 for medical expenses. The evidence shows that the employer notified Dr. Ashworth prior to the second operation performed in Michigan that it would pay no out-of-state medical expenses. It appears that Porter learned of this contention by his employer before the second operation in Michigan was performed but at a time when he had already arrived in Michigan for the second operation. The travel expenses and the medical and hospital bills resulting from the Michigan trips were filed in evidence. The Board in its award directed the employer to pay Porter's medical and travel expenses in connection with his treatments not to exceed in the aggregate $9,200 and to be credited by sums previously paid for medical treatment. The employer's liability for expense of medical treatment, therefore, was determined to be an amount that was $5,700 in excess of the generally applicable statutory limit of $3,500.

The employer does not attack the amount of the charges attributable to the Michigan treatment as unreasonable, either by Michigan's standards or Kentucky's standards, for the rendition of such services. The employer actually attacks the Board's decision by reason of only two contentions: (a) The employer and not the employee had the right to designate the physician, and (b) the Board is without authority to approve medical expenses incurred out of state in workmen's compensation cases.

Confining ourselves strictly to the employer's contentions on this appeal, we are unable to find merit in either of the stated contentions.

■ The undisputed facts demonstrate that Dr. Ashworth was not a physician "selected" by the employee in the sense that "selection" of a physician is ordinarily understood. The employee was severely injured under circumstances that created a type of emergency. Dr. Ashworth, as the available orthopedist at the hospital to which the employee was taken immediately after injury, commenced treatment and continued to attend. Porter. The employer did not undertake to substitute any physician in place of Dr. Ashworth and admitted its liability to compensate for those medical services. Dr. Ashworth, in effect, became the employer's physician. Hence, the authorities cited by the employer dealing with situations where the employee failed to give the employer the opportunity to designate a competent physician are not applicable.

■■ KRS 342.020(1) does not impose the duty on the employer to pay medical, surgical and hospital expenses of a physician to be selected by the employee. What the statute does do, however, is go further than mere requirement of payment; it directly imposes upon the employer the duty *to furnish* medical, surgical and hospital treatment to the injured employee for the cure of and relief from the effects of a compensable industrial injury. Cf. Richard v. Fireman's Fund Insurance Company, Alaska, 384 P.2d 445 (1963). The statute limits the total expense the employer is generally required to pay out in observing this duty to furnish treatment at the sum of $3,500; unless, however, the Board finds that further medical, surgical and hospital treatment is "justifiably needed." Therefore, the burden of establishing need of further treatment where that need requires an expenditure by the employer in excess of $3,500 is upon the employee. The Board must exercise sound discretion in making the determination whether that need is present and whether the amount of the additional expense is reasonable in view of the total relevant circumstances.

 The statute is silent concerning where the treatment must be afforded. Therefore, upon proper showing the Board is authorized to allow out-of-state treatment at the employer's expense. We find no statutory prohibition against such procedure.

 The amount allowed for expenses of necessary medical, surgical and hospital treatment should be reasonable and should represent the fair value of the service as such. The statute created no open season on employers for exorbitant medical charges. The Board is authorized, in the exercise of its discretion, to disallow those portions of medical charges which are unreasonable, despite the fact the charges have been incurred by the act of the employee. Our Workmen's Compensation law is not concerned with the rights of persons supplying services to injured employees, it is concerned instead with the duty of the employer to furnish competent medical treatment for the cure of and relief from the effects of an industrial injury. 99 C.J.S. Workmen's Compensation § 275 and § 277. Our whole legislative scheme is geared in that direction. For example, KRS 342.-035(2) provides that the disability of an employee to the extent that it is aggravated, caused or continued by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice shall be noncompensable and the employer is relieved from liability to that extent.

In Porter's case, the physician, recognized by the employer as the agent through whom its duty to furnish medical treatment to the employee would be performed, advised the employee to subject himself to out-of-state medical procedure. The type of operation recommended was not then obtainable in this state. The employee followed this medical advice, although his refusal to subject himself on two occasions to innovative surgery in all probability could not have been characterized as unreasonable on his part. Nevertheless, if the surgery had been successful the employer's liability for compensation for disability would have been reduced. If the employee had refused, though his refusal was not unreasonable, the employer's liability for compensation for disability would have remained the same or perhaps would have been enhanced, assuming, of course, the result of the unperformed operation could never have been known.

We see no escape from the plain proposition that the statutory scheme vests discretion in the instance presented in the Board. That discretion may not be arbitrarily used. Of course, if the Board had the right of prior approval, it likewise had the right to validate the additional medical and surgical treatment on the basis of a showing of justifiable need, particularly where the employer's physician had recommended and advised it.

Limited, therefore, to the factual situation presented by this case, we agree with the circuit court that the Board's determination cannot be disturbed in this case.

The judgment is affirmed on both the appeal and the cross-appeal.

All concur.