306 A.2d 797.
MICROFIN CORPORATION *vs.* FRED DE LISI.
JULY 3, 1973.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

704

PAOLINO, J. This is an employer's petition to review a preliminary agreement dated May 14, 1970. The trial commissioner granted the petition and the full commission affirmed. The cause is before us on the employee's appeal from the decree entered by the full commission.

On January 27, 1970, respondent, while employed as a factory worker by petitioner, sustained a compensable injury which resulted in the amputation of a portion of his right index finger. His employment with petitioner was part-time employment. He worked 25 hours a week at $2.15 per hour and had weekly earnings of $53.75. His work was mainly heavy work and involved tying, placing, washing and lifting heavy material. His work also involved picking up "a lot of little small pieces" with his index finger and holding them in his hand so that he could spray them. He stated that some of them were one and one-half inches in size.

At the time of his employment with petitioner, respondent was also working as a self-employed barber giving haircuts and shaves. As a barber he averaged about $80 a week prior to his injury. This amount combined with his weekly earnings at Microfin Corporation produced an average weekly wage of $134.43 for purposes of computing compensation benefits under a preliminary agreement dated

May 14, 1970.[1]  The respondent also received $45 a week for 61 weeks as specific compensation for the permanent 25 per cent loss of use of his right hand, pursuant to a preliminary agreement dated August 5, 1970.

On May 10, 1971, petitioner filed the instant petition wherein it alleges that respondent's incapacity for work has ended and that he is now working. The respondent and his attending physician, Dr. G. Edward Crane, a qualified orthopedic surgeon, testified at the hearing before the trial commissioner. The respondent's testimony is substantially as follows. On April 24, 1970, he went to petitioner and asked for a job but was told there was no work available. He resumed his work as a barber five days a week, most of the time eight hours a day on August 10, 1970, but his earnings were reduced from $80 a week prior to his injury to $58 a week. The reason petitioner gave for the decrease in his earnings was that he was unable to shave customers as he had before because the tip of the amputated index finger was very numb and sensitive and became swollen at times.

With regard to his work at petitioner's place of business, respondent testified that he could not go back and do that same work because it was very heavy work which would require the index finger to be in contact with the materials. Additionelly, as we have previously stated, he testified that he would have to use his index finger in picking up small pieces so that he could spray them.

---

[1]General Laws 1956 (1968 Reenactment) §28-33-20, as amended by P. L. 1969, ch. 145, sec. 1, effective September 1, 1969, reads, in pertinent part, as follows:

"Where the injured employee has worked for more than one (1) employer during the thirteen (13) weeks immediately preceding his injury his average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period involved and * * * the employer in whose employ the injury was sustained shall be liable for all benefits provided by title 28, chapters 29 to 38 inclusive, of the general laws, 1956."

Doctor Crane's testimony in substance is as follows. He attended respondent from the date of his injury and amputated his right index finger at the second joint. The wound healed satisfactorily. He saw respondent last on November 17, 1970, and discharged him on that date. He was then no longer disabled as far as his occupational injury was concerned and with the exception of the loss of two phalanges of his index finger, the strength of his hand was not diminished. He could do "heavy work, bull work and heavy lifting," but he "couldn't do intricate work."

In cross-examination the doctor explained what he meant by his statement that respondent "couldn't do intricate work." He said respondent would have difficulty in a "pincer grip." In reply to further questioning by respondent's counsel, he said that respondent had a "22% loss of the hand as a whole" and that this was a permanent condition; that when he last saw respondent, there was some numbness at the tip of the finger which would affect intricate small sensations of a pincer grip; that he had a good skin flap over the stump of his finger; that he could exert pressure against the stump repeatedly; and that he had "ten degrees lack of motion in the metacarpophalangeal joint of the finger."

In reply to another question by respondent's counsel as to whether respondent had lost the ability to hold "certain items" in the same fashion as he was able to hold them before the injury, Dr. Crane stated that respondent "would have to compensate." The doctor also said that he was not aware of the tools or other instruments or appliances which respondent had to use when he performed his work in the factory.

The trial commissioner found that respondent was no longer totally incapacitated as a result of the January 27, 1970 injury and was able to return to his regular work on a full-time basis and was no longer suffering any loss of

earning capacity.  Accordingly, he ordered the suspension forthwith of any further payments to respondent.  A decree to that effect was duly entered.

In its decision affirming the decree entered by the trial commissioner, the full commission, after reviewing the record before them, found that the evidence was clear that respondent's finger had completely healed; that no other finger on his right hand was injured; and that according to his physician's testimony he had ample strength in his hand and only lacked a "pincer grip" between the index finger and the thumb.

It further stated that the trial commissioner inferred, as it did, that the duties which respondent performed for petitioner were generally heavy in nature; that the requirement that he work with small pieces of material was not a major part of his job; that it felt it was perfectly proper to infer that the "pincer grip" between respondent's middle finger and his thumb, and the ring finger and his thumb was not impaired and that those fingers could be used in place of the index finger; and that the great weight of the evidence supports the trial commissioner's finding that respondent was no longer incapacitated from performing the duties which he performed for petitioner.

With regard to respondent's testimony that he was not earning as much money as a self-employed barber, the full commission said that this evidence was inconclusive because there are many elements which enter into the income derived from self-employment where physical ability is only one of the income producing elements.  It concluded that the trial commissioner's findings were supported by the evidence.

The narrow issue raised by this appeal is whether the employer has sustained its burden of establishing by competent evidence that respondent's incapacity for work has ended.  The respondent contends, in substance, that the

commission's finding that respondent regained his earning capacity is erroneous because it is contrary to the record and is based upon inferences that are not supported by the record and are conjectural in nature. Specifically, respondent argues (1) that the trial commissioner omitted any inference or consideration with respect to the small pieces that respondent had to work with and to the doctor's testimony regarding sensitivity and respondent's difficulty with intricate or small items and the pincer grip problem; (2) that the commission overlooked our holding in *Builders Iron Work, Inc.* v. *Murphy,* 104 R. I. 637, 642, 247 A.2d 839, 842 (1968), requiring the employer, on a petition to review, to establish "* * * either that the employee has recovered sufficiently so that he can in safety resume his former occupation or that his earning capacity is unaffected by the residuals flowing from his injury"; and (3) that the record is completely void as to any evidence produced by petitioner, either direct or from which a reasonable inference could be drawn, that respondent was able to give shaves and/or fully regained his earning capacity as a barber.

Before discussing the arguments made by respondent, all of which we find to be without merit, it may be well to reiterate briefly some of the basic guidelines governing this court in considering appeals in workmen's compensation cases. Under our Workmen's Compensation Act compensation is paid for loss of earning capacity resulting from the injury received by the employee and not for the injury itself. *Peloso, Inc.* v. *Peloso,* 103 R. I. 294, 297, 237 A.2d 320, 323 (1968). The burden of proof is upon the one who asserts the affirmative in his petition, and, on an employer's petition to review, the employer must establish by legal evidence the essential elements of his petition. *Best Plastics, Inc.* v. *Grilli,* 101 R. I. 32, 34, 219 A.2d 913, 914 (1966). Findings not supported by legal evidence, or the reason-

able inferences to be drawn therefrom, constitute error of law. *Woods* v. *Safeway System, Inc.,* 101 R. I. 343, 223 A.2d 347 (1966). We do not weigh the evidence. If the findings made by the commission are based upon some legal evidence, they will not be disturbed by this court on appeal. *Coppa* v. *M. A. Gammino Constr. Co.,* 95 R. I. 1, 182 A.2d 322 (1962).

In the case at bar there is legal evidence to support the commission's finding that respondent's incapacity for work had ended. The respondent testified that he could not go back to do his regular work at petitioner's factory because the work there was "all bull work" and "all very heavy work" involving "[h]eavy lifting, drop[ing] these things down in tanks, tieing them up, lifting, washing them in tanks." This testimony was contradicted by Dr. Crane's testimony that as of November 17, 1970, respondent was no longer disabled as far as his occupational injury was concerned, that with the exception of the loss of two phalanges of his index finger, the strength of his hand was not diminished, and that respondent could do heavy work, bull work and heavy lifting, but that he could not do intricate work. It is clear that the commission accepted the doctor's testimony and rejected respondent's. We cannot fault them for so doing.

The record shows that the commission, whose decree we review, expressly referred to and considered respondent's testimony with respect to the small pieces that he had to work with to perform his job and Dr. Crane's testimony regarding respondent's difficulty with intricate work or small items and the pincer grip problem. As we have previously stated, the commission found that the evidence was clear that respondent's finger had completely healed, that no other finger on his right hand was injured, and that he had ample strength in his hand and only lacked a pincer grip between the index finger and the thumb.

710

The commission inferred that the duties which respondent performed for petitioner were generally heavy in nature and the requirement that he work with small pieces of material was not a major part of his job. The commission also found by way of inference that the "pincer grip" between respondent's middle finger and his thumb, and the ring finger and his thumb was not impaired and that those fingers could be used in place of the index finger. The commission's findings, express and inferential, are supported by competent evidence. Additionally, respondent never testified that he was unable to pick the small pieces up or to perform that part of his job. It follows from what we have said with regard to respondent's work with petitioner, that respondent could, if his regular work was available at petitioner's factory, resume his former occupation and that, with respect to such work, his earning capacity is unaffected by the residuals flowing from his injury. In the circumstances, respondent's claim that the commission overlooked our decision in *Builders Iron Works, Inc.* v. *Murphy, supra,* is without merit.

We consider next respondent's contention that the record is completely void as to any evidence produced by petitioner, either direct or inferential, that respondent was able to give shaves and/or had fully regained his earning capacity as a barber. We agree with respondent's statement that no specific inquiry was made of Dr. Crane as to respondent's ability to give shaves as a barber. However, there is competent evidence in this record, both direct and inferential, indicating that respondent was able to give shaves, showing that he had fully regained his earning capacity.

In the circumstances, on this record, we need not, and do not, decide whether an injured employee who has worked for more than one employer during the 13 weeks immediately preceding his injury is entitled to compensation benefits

until such time as his earning capacity is restored as to all such employments. We merely refer to the evidence which we believe establishes that respondent's incapacity for work as a barber had ended and that he had regained his earning capacity in that employment.

Doctor Crane's testimony about the condition of respondent's right hand and the commission's finding "* * * that the 'pincer grip' between the employee's middle finger and his thumb, and the ring finger and his thumb was not impaired and could be used in place of the index finger" apply to his work as a barber. Implicit in such finding is the further finding that respondent's incapacity for work as a barber had ended and that his earning capacity in that work was unaffected by any residuals from his injury. This conclusion is supported by the commission's statement regarding respondent's testimony about the decrease in his after-injury earnings in his barber business and by respondent's own testimony that he earned less money subsequent to his injury than he did before because of other factors in addition to his inability to shave. He explained these factors as follows:

> "Don't forget, no teen-agers are getting haircuts, there's no children, no middle-age children.
> * * *
>
> "Then on top of it, I was closed for all that time, I lost all them customers, they are never going to come back once they start going somewhere else, that's the end of it."

We believe that petitioner has sustained the burden prescribed in *Builders Iron Works, Inc.* v. *Murphy, supra,* with respect to respondent's self-employment as a barber.

The employee's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the Workmen's Compensation Commission for further proceedings.

Mr. Justice Powers participated in the decision but re-

tired prior to its announcement. Mr. Justice Joslin and Mr. Justice Doris did not participate.

*Carroll, Kelly, and Murphy, Ambrose Carroll, Joseph A. Kelly,* for petitioner.

*Abedon, Michaelson, Stanzler and Biener, Richard A. Skolnik,* for respondent.