342 A.2d 608.

JOHN J. McAREE *vs.* GERBER PRODUCTS COMPANY.

JULY 29, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

244

KELLEHER, J. This is an employee's appeal from the denial by the Workmen's Compensation Commission of his petition to review a preliminary agreement. The petitioner sought an order which would compel his employer to pay for a specialized medical treatment program whose goal would be the elimination of what appears to be a work-related addiction to drugs.

The sole question is whether or not the employer and its insurance carrier have a duty to pay for certain medical and psychiatric treatment which the employee's treating physician has recommended.

On July 16, 1969, McAree worked as a salesman for Gerber. On that date while lifting a case of his employer's baby food in a supermarket, McAree injured his back. He and Gerber reached an agreement as to liability for the injury and, on August 9, 1969, they executed a preliminary agreement which described McAree's ailment as a "low back strain." Gerber agreed to pay McAree $45 a week while he was totally incapacitated as well as "all reasonable bills for hospital and medical service and for necessary medicines" that are provided for by the Workmen's Compensation Act.

In the intervening years, McAree has been treated by Dr. Julius Stoll, surgeon in chief of the Rhode Island Hospital's Department of Neurosurgery. This treatment has included two major operations. The first was disc surgery, and the second was an attempt to relieve McAree of constant pain which continued after the first operation. The operation was not successful, however, and McAree continued to experience severe pain due to nerve damage unalleviated by either surgical attempt. In an effort to pinpoint the specific nerve roots which were the primary cause of the pain, Dr. Stoll, in August 1972, performed several complex diagnostic tests including a myelogram and a nerve block. Although he discovered the cause of his patient's discomfort, Dr. Stoll decided against operating a third time because he found quite a bit of scarring in the area and this created a high surgical risk which he advised his patient against taking.

Before the trial commissioner, the doctor testified that, further surgical remedies being ill-advised, his only treatment alternative to control McAree's discomfort was to prescribe large quantities of prescription pain killers. This medication is potentially addicting, and Dr. Stoll testified that, in his judgment, the employee was "probably addicted" to the medication by now.

He told the commissioner that he now considered the addiction a serious problem which was in need of treatment. He also felt that the patient was experiencing psychological problems because of the pain and the resultant addiction and that he was "too young a man to throw out the window." He therefore had recommended to McAree that he seek treatment at a Massachusetts facility known as the New England Rehabilitation Center which had a "pain unit" headed by a physician who enjoyed the unique distinction of being board certified as a neurologist, a psychiatrist, and a neurosurgeon, and

whose clinic would treat the "whole person." Gerber's insurance carrier refused to sanction such treatment, and said it would not pay for it. The rehabilitation center, on the other hand, was not willing to admit McAree unless and until it received prior authorization from the carrier and assurances that it would be paid for its services.

Unable to resolve the impasse caused by the intransigence of Gerber, its carrier, and the center, McAree requested a hearing before the Workmen's Compensation Commission to determine whether the cost of the treatment fell within his employer's obligation. At the hearing before the trial commissioner, Dr. Stoll testified as to the history of his patient's condition and his recommendation for further treatment. He also explained the services available at the Massachusetts clinic. The trial commissioner issued a decision in which he found that the employee was in need of further medical services in order to cure, rehabilitate, or relieve him from the effects of his injury, and that such care was available at the Massachusetts clinic. He ordered the employer to pay all reasonable costs of the treatment. From this ruling Gerber appealed to the full commission.

The full commission reversed the decision of the trial commissioner and found that the employee had not met his burden of proving either that he was in need of further treatment, or that the rehabilitation center could offer such care. Additionally, the commission held that there was no statutory authority for the payment of services to out-of-state medical facilities, and that it lacked jurisdiction to rule on the employee's request for a determination of prior authorization of treatment. Any one of these four findings is sufficient to defeat the employee's claim. Because of the view we take of the case, we must review all four. We shall first consider the jurisdictional question.

The commission characterized the petition as one seeking permission to obtain treatment in the future and noted that the only express statutory provision for the obtaining of prior commission approval is G. L. 1956 (1968 Reenactment) §28-33-5, which requires that the employee obtain permission prior to any major surgery to be entitled to have his employer pay for the surgery. It therefore declared itself without jurisdiction to hear the employee's case.[1]

We disagree. Section 28-33-5 is not framed in exclusionary terms so as to prohibit any other kind of prior approval, but merely mandates that, as to "major surgery,"[2] prior approval must be obtained if the surgeon expects to be paid by the employer or the insurance carrier. We have repeatedly said that the Workmen's Compensation Act is to be construed liberally to effectuate its obvious purpose. *Matthews* v. *Falvey Linen Supply, Inc.*, 110 R. I. 558, 294 A.2d 398 (1972).

It is our belief that the prior approval or "no pay" proviso for major surgery is not a limitation on the commission's jurisdiction to adjudicate McAree's eligibility for treatment. Rather, the proviso acts as a limitation on the employee's right to incur substantial medical expenses before the employer has had an opportunity to make an investigation as to the necessity for the surgery. McAree and Gerber have a valid agreement which provides that the employer will pay for all reasonable medical treatment

---

[1] We commend the commission for its review of all the issues presented by this litigation. Had the commission rested its decision solely on the jurisdictional issues, McAree would have been compelled to return to the commission for a determination of the factual questions. By considering the entire controversy, the commission has afforded the employee with an opportunity to have a complete, meaningful, and expeditious review of his case.

[2] This requirement does not apply to emergency surgery.

which was necessary to cure, rehabilitate, or relieve the employee from the effects of his injury. A clear disagreement has arisen between them as to whether the proposed treatment falls within the scope of this agreement. The Legislature has provided that employers and employees *need* not go before the commission in order to provide for compensation for all injuries but may settle the problem by private agreement.[3] However, where, as here, a conflict arises as to the scope and effect of such agreement, the commission is clearly the proper forum for resolving the dispute. Section 28-35-11 gives it the general, broad jurisdiction to determine "[a]ll questions arising under [the act] if not settled by agreement of the parties interested therein * * * except as otherwise provided." More specifically, the commission is charged with the enforcement of any agreement approved by it. Section 28-35-7. We therefore hold that a dispute such as the one which arose here is subject to the determination of the commission, and within its jurisdiction to adjudicate.

The decree of the full commission contains a finding "[t]hat the petitioner has failed to prove by a fair preponderance of the reasonable evidence that the New England Rehabilitation Center, Inc. has complied with the provisions of the workmen's compensation act entitling it to be paid for any services rendered under Sec. 28-33-8." Although we cannot fault the accuracy of this statement, we find it of no relevance to McAree's petition. Section 28-33-8 requires that, in order to be entitled to payment for its services, a hospital or attending physician must, within 15 days, notify the employer of the commencement of treatment, and submit bimonthly pro-

---

[3]Subject to approval by the commission, the parties may agree by private negotiation for recompense. Such agreements must be filed with the commission. General Laws 1956 (1968 Reenactment) §§28-35-1 through 8.

gress reports to it thereafter. The petition to the commission, and the hearing on the petition both occurred before the treatment had been commenced. We take judicial notice of the fact that time operates on a continuum and that events which may happen in the future have not yet occurred in the present. However, we fail to see how this obvious fact affects the result in this case or why it entered into the commission's decision to deny McAree's petition. The petition alleged that the employer was refusing to "provide or pay for necessary medical services." The trial commissioner ordered the employer to pay "all reasonable charges" of such services. There is, of course, no way to determine what the reasonable costs for the services will be until they are offered. Nothing in the decision issued by the trial commissioner assures the hospital of actual payment. It must still comply with §28-33-8 in order to be entitled to payment and future disputes may still arise as to what are the reasonable costs for the care it will give McAree. The commission was not asked to approve payment in futero. Here, as we view the matter, the issue is whether or not the proposed course of treatment is necessary to cure, rehabilitate, or relieve McAree from the effect of his work-related injury. This was the issue to be resolved initially by the trial commissioner and by the full commission on review.

Of more relevance to the deciding of McAree's petition is a statement contained in the full commission's decision in which it questioned its "authority to order payment for treatment rendered by the Center under the provisions of Sec. 28-33-5," because the center is a non-Rhode Island hospital, not licensed within this state. The commission supported its position by pointing to that part of the statute which sets forth the outline for the administrative procedures to be followed by the Director of Labor in establishing the method of billing and payment for services rendered by

hospitals. The Legislature provided several guidelines for the determination of reasonable cost: that the liability of the employer shall be coextensive with the cost to the hospital of rendering its services; that as a measure of such costs, the director may accept the standards adopted by the federal medicare program; and that each hospital licensed under Rhode Island law must submit its cost schedules to the director. The statute is silent regarding the use to which these mandatory filings will be put.

We cannot accept the determination of the commission that this reference to duly licensed in-state hospitals in a statute setting forth purely internal administrative guidelines for the Director of Labor evidences an intention by the Legislature to prohibit the providing of care to injured employees by out-of-state hospitals. As the benchmark for our analysis, we need only reiterate that the act is to be liberally construed. *Matthews* v. *Falvey Linen Supply, Inc., supra.*

Our Legislature has clearly evidenced a policy of providing the employee with a free, unrestrained choice of physicians. Section 28-33-8. In fact, §28-33-5, on which the commission relied in its decision that the out-of-state hospital care could not be covered, expressly makes reference to §28-33-8's provision for complete employee control over his choice of the physician or hospital which will expedite his return to the work force.

The Rhode Island physician who is treating McAree, and who recommended the Massachusetts clinic, testified before the trial commissioner that, in his opinion there is no facility just like it in Rhode Island, and that the Massachusetts clinic would afford McAree a "better opportunity" than any Rhode Island facility for relief from his pain and his addiction. He described the facility as one designed to treat the whole person, with all the necessary kinds of medical and psychiatric skills available

under one roof, and with the various doctors and staff working as a team. There, he said, the employee's inability to live with his pain, his addiction, and possibly even his continuing neurological problems would be treated together. In Rhode Island, on the other hand, the only way of providing similar treatment to McAree would be by sending him to a number of different specialists who would each work independently of the others, each treating only a part of the problem which McAree is experiencing as a result of his original injury. Doctor Stoll put this facet of the appeal in its proper focus when he observed that there was need to "treat the whole package to do anything for this man," and that the Massachusetts "setting would provide a better result than what we could do by sending him to a psychiatrist and various things like that around town." Neither the employer, nor the full commission has offered any refutation of this medical opinion.

One of the purposes of the compensation legislation is to afford relief and provide rehabilitation for those who are "casualties of the modern industrial world." *Nardolillo* v. *Big G Supermarket, Inc.,* 111 R. I. 751, 306 A.2d 844 (1973). The modern industrial world is characterized by increased mobility and the destruction of artificial boundaries between countries as well as states. While the state is still recognized as a sovereign entity, capable of regulating within its borders, we must not ignore that the modern technological world, in particular the medical world, recognizes no such boundaries. Certain areas, such as Boston and New York, have become centers for medical research and advanced treatment techniques. Some hospitals or clinics have developed expertise in specific fields of research unmatched by any other in the country. This is not to disparage the quality of medical care available within the boundaries of our state, but merely to

recognize that the increasingly specialized and technologically complex practice of medicine requires extensive capital investment and specially trained staffs which it would be economically unfeasible and wasteful to duplicate within any one geographical area.

If such further treatment is found to be necessary for the cure, rehabilitation, or relief of McAree's disability and the out-of-state treatment affords him a better opportunity for recovery or relief, we cannot find it to be prohibited by the Legislature. We hold that the mere fact of the extrajurisdictional nature of the clinic is no bar, and that the Legislature did not intend it to be a bar to McAree's and his physician's choice of a treatment facility.

Although comparison with other states is difficult, and often dangerous in the workmen's compensation field because of the disparate nature of each state's unique statutory scheme, we find support for our ruling here in other jurisdictions. Under Maine law the employee selects his physician from a panel of doctors chosen by the Industrial Accident Commission. 39 M.R.S.A. §52. In *Chaples* v. *Gilco, Inc.*, 280 A.2d 546 (Me. 1971), the physician selected by the employee from that panel had sent his patient to Boston for examination and diagnosis by a Massachusetts physician. The employer had refused to pay for the services of the non-resident physician, and argued to the court that the doctor was not on the approved panel, nor could he have been, not being licensed to practice in the state of Maine. The court pointed out that the conferring diagnostician's services were undisputedly "medically necessary." It held that the disputed services having met the statutory tests of necessity and reasonableness, there was no bar to out-of-state consultations in the act and therefore no bar to commission approval of payment.

The South Carolina Supreme Court, in *Ward* v. *Dixie Shirt Co.*, 223 S. C. 448, 76 S.E.2d 605 (1953), likewise held that there being no statutory provision prohibiting such action, the commission had the power to order treatment at a Georgia hospital by Georgia physicians, where the attending South Carolina physician had advised his patient to seek surgery. *Accord, Howell* v. *Cottage-Ette Mfg. Co.*, 186 So.2d 1 (Fla. 1966), adopting as law the concurring opinion in Florida, *Cartage Co.* v. *Tyler*, 90 So.2d 291 (Fla. 1956); *Commonwealth of Kentucky, Dept. of Hwys.* v. *Porter*, 469 S.W.2d 350 (Ky. 1971); *Ranellucci* v. *N. Y. Central RR*, 306 N. Y. 896, 119 N.E. 2d 594 (1954).

Having dealt with and resolved the question of the commission's jurisdiction and the legitimacy of out-of-state treatment, we now turn to the underlying questions of fact which the trial commissoner resolved in favor of McAree, and which the full commission, in reversing the trial commissioner, resolved for the employer. The decree sets forth the commission's findings that the employee did not prove by a preponderance of the evidence that he is in need of further treatment to relieve him from the effects of his injury, and that he did not prove by a preponderance of the evidence that the treatment available at the New England Rehabilitation Center would help to relieve him from the effects of his injury.

The employee produced two witnesses at the hearing, Dr. Stoll, who is and was his treating physician, and his rehabilitation counselor from the Department of Social and Rehabilitative Services. The employer did not present any evidence.

Doctor Stoll testified that McAree "has arachnoiditis and [the] nerve damage is very real," and that "we know perfectly sure [sic] that this man has real pain." He also asserted that in his opinion McAree "probably is ad-

dicted" to the medication he is currently taking. The commission's conclusion that McAree has not proved himself in need of further medical care is devoid of all but one sentence of supporting explanation. The commission found that Dr. Stoll had not seen petitioner or treated him for over a year prior to the hearing; it therefore decided that this "clearly limits the weight to be given concerning McAree's present physical condition." We assume, then, that the commission does not disbelieve the doctor's testimony, but merely does not credit it as based on current conditions.

Although the record supports the assertion that Dr. Stoll has not "seen" his patient in over 12 months,[4] there is nothing in the record to justify the commission's finding that Dr. Stoll has not "treated" him during that time. We feel that there are times when today's physician must of necessity treat his patient without seeing him. It can be done through the use of the telephone. Doctor Stoll was in contact with McAree and his wife by phone, with his wife in person, and he prescribed meidcation for his patient in late 1972 and the early portions of 1973. Unless the commission is making a legal determination that prescribing drugs is not treatment, which we doubt, we can find no legally competent evidence in this record to support its finding that Dr. Stoll had not treated McAree for over a year prior to his testimony. We can only assume that it either overlooked or misconceived the physician's uncontradicted testimony as to his continuing course of treatment of McAree. The commission therefore committed an error of law, which is within the province of this court to correct on review. *Barber* v. *Uniroyal, Inc.*, 107 R. I. 401, 267 A.2d 697 (1970). The commission having erred in arriving at its rationale for not giving full

---

[4]The year referred to by the commission encompasses the period beginning in August 1972 and ending September 1973.

weight to the doctor's testimony, we will purge this error from its decision.

We are thus left with the treating physician's clear and decisive testimony that his patient needs medical treatment for both his nerve-damage-caused pain and the consequent drug addiction. Although there is no question that the burden of proof was properly placed on the employee under our rule that the burden falls upon him who, before the commission, alleges the affirmative, *Microfin Corp.* v. *De Lisi*, 111 R. I. 703, 306 A.2d 797 (1973), and although we cannot weigh the evidence but must accept the determination of the commission if we can find any evidence to support it, *Thompson* v. *Coats & Clark, Inc.*, 105 R. I. 214, 251 A.2d 403 (1969), nonetheless, where the commission has before it uncontroverted testimony not discredited either by other positive testimony or by extrinsic or intrinsic circumstantial evidence, not containing inherent contradictions, and not subject to disregard because it lacks credence or is unworthy of belief, such testimonial evidence is conclusive upon the trier of facts. *Laganiere* v. *Bonte Spinning Co.*, 103 R. I. 191, 236 A.2d 256 (1967). For the commission to ignore or overlook the testimony of McAree's present physical condition was an error of law which is reversible on appeal. *Suffoletta* v. *Ricci Drain Laying Co.*, 113 R. I. 114, 319 A.2d 19 (1974).

The above discussion assumes that it was the unwillingness of the commission to accept the testimony of Dr. Stoll that caused it to find McAree not in need of further treatment. If its decision was instead based upon its belief that McAree's current ailments are not causally related to the original 1969 injury, it is clearly wrong. The addiction is a direct side effect of the procedures adopted by the physician to treat the original injury. Incapacity such as drug addiction, the direct result of

treatment which is intended to cure or relieve the original injury, is causally linked to the work-related disability. *Perron* v. *ITT Wire & Cable Div.*, 103 R. I. 336, 237 A.2d 555 (1968); *cf. Gamco, Inc.* v. *Shea*, 88 R. I. 419, 149 A.2d 346 (1959).

Having found that the commission did have jurisdiction to grant McAree the assistance he sought and that he was in need of such treatment, we come to the commission's second factual determination, to wit, that McAree did not prove by a fair preponderance of the evidence that the services and treatment available at the Center would be helpful in curing or rehabilitating him. We must take issue with this conclusion.

The commission characterized the surgeon's and counselor's testimony in relation to the center's facilities and program as being based "* * * solely on hearsay since neither the witnesses had ever visited the Center nor had any real personal knowledge of the Center or the treatment rendered there." Here the employer interposed nary an objection during the examination of Dr. Stoll. Hearsay evidence to which no objection is offered is entitled to be treated as if it were legally admissible and to be accorded whatever probative weight the factfinder believes it deserves. *Gilbert* v. *Girard*, 109 R. I. 68, 279 A.2d 919 (1971). The commission in discounting the witness' hearsay described it as "very limited and not too clear." This of course was the factfinder's right and within the rule of the *Gilbert* case. However, in its concern for hearsay, the commission apparently overlooked another portion of the surgeon's testimony in which Dr. Stoll explained that his belief of the virtues of the center was based on the experience he had had with other patients whom he had

referred there. He told the trial commissioner[5] that he had sent three or four patients to the center and many of them had good results. He also informed the commissioner that he had conferred with the center's chief physician and in fact "knew him."

While we must acknowledge that the surgeon's presentation of his testimony may not be as precise as his efforts in the operating room, a close look at Dr. Stoll's testimony does show that there is evidence that he had a personal working relationship with the center that would justify a belief that the Massachusetts facility could play an important role in assisting his patient in his present difficulties.

Rather than say that the evidence of Dr. Stoll's personal involvement with the center warrants a holding as a matter of law that McAree had sustained his burden in this facet of his appeal, we will remand the case to the commission so that it can evaluate Dr. Stoll's past experience with the clinic. In remanding this case to the commission, we would note that in its decision it expresses some doubt as to the employee's desire to undergo the proposed course of treatment. The doubt is apparently based on the fact that McAree did not appear before the trial commissioner.[6] The only evidence of his will-

---

[5]This case is unique in one circumstance. The trial commissioner was the commission's distinguished chairman George Roche. He retired after hearing the petition. When the employer's appeal was heard before the full commission, Commissioner Herman D. Ferrara had assumed the post of chairman and Commissioner Eugene J. LaFerriere had succeded Chairman Roche as a commission member. The author of the commission's decision was its third member, Commissioner Donald A. Kingsley.

[6]The commission's remarks as to Mr. McAree's absence from the hearing before the trial commission is a reference to the so-called empty chair doctrine which holds that a litigant's failure to produce an available witness who had been expected to testify in support of the litigant's

ingness, observed the commission, is the presence of Mc-Aree's signature on the petition to review. While these observations appear to be a gratuitous statement by the commission and played no part in its rejection of McAree's petition, the record indicates that Dr. Stoll did testify that his patient had gone to Massachusetts, that he had been interviewed by the center's chief of staff, and that he was on the center's waiting list with about a month's wait before admission.

The employee's appeal is sustained, and the case is remanded to the commission for its evaluation of the evidence relating to the New England Rehabilitation Center's ability to help McAree. Thereafter the commission shall enter a new decree which shall be in compliance with this opinion.

*Raul L. Lovett,* for petitioner.

*Harold E. Adams,* for respondent.

---

case permits the factfinder to draw an inference that had the witness chair been occupied, the witness would have testified adversely to the litigant. We have, however, recognized that this doctrine should be applied with caution and have insisted that before it can be embodied in a charge to the jury, the trial justice must be satisfied as to the witness' availability and the party seeking the benefit of the inferences must make it known that he is going to ask the trial justice to charge accordingly. *Anderson* v. *Friendship Body & Radiator Works, Inc.,* 112 R. I. 445, 311 A.2d 288 (1973); *Benevides* v. *Canario,* 111 R. I. 204, 301 A.2d 75 (1973).