William HOLME

v.

The CARLSON CORPORATION.

No. 89–434–M.P.

Supreme Court of Rhode Island.

Nov. 29, 1990.

Marc Gursky, Providence, for plaintiff.

Michael J. Feeney, Robert G. Jeffrey, Higgins, Cavanagh & Cooney, Providence, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on an employee's petition for the issuance of a writ of certiorari. He seeks our review of the record of a Workers' Compensation Commission proceeding wherein the Appellate Commission reversed a decree entered by the trial commissioner. The trial commissioner had awarded the employee workers' compensation benefits for an aggravation of a pre-existing condition. The pre-existing condition was the result of a work-related injury the employee suffered in 1977 while working for the same employer. We quash the decree appealed from and remand.

The case before us on appeal involves an original petition filed against The Carlson Corporation for medical expenses and disability benefits covering a period of disability that began in July 1984. That petition alleged an aggravation of a pre-existing condition that had resulted from the 1977 injury. That petition was consolidated for hearing with a companion petition to review that alleged that the 1984 period of disability resulted from a recurrence of the 1977 injury.

Evidence presented established that in 1977 employee, William Holme (Holme), worked as a carpenter foreman for respondent, The Carlson Corporation. He sustained a work-related injury on February 10, 1977, and was paid workers' compensation benefits under a preliminary agreement until January 7, 1981. At that time Holme returned to work with the same employer, The Carlson Corporation, at his pre-injury wages. The severity of his injuries had required two laminectomies, the second one performed a year after the first.

In his testimony Holme described his return to work following the surgeries. He continued to work as a carpenter foreman, and he testified that everyone he worked with knew he had a back problem. As a carpenter foreman he was usually in charge of the projects to which he was assigned. Under union rules if his crew was composed of seven or fewer carpenters, he was required to work as a carpenter himself as well as to supervise the others. During most of the time between the two periods of disability he worked

with a crew of less than seven. His work involved laying out footings and foundations. He was required to climb down into trenches, thus covering uneven ground, as well as to climb to roofs. It required the wearing of work shoes and a helmet at all times. He frequently had to carry four foot by eight foot sections of 5/8–inch plywood, two at a time. There was frequent if not constant "climbing stairs, bending, stooping, stretching, and reaching." In his own words, it was "all tough for the shape I was in but nothing I couldn't handle."

The employee testified that he was always in pain "but nothing I couldn't stand." And "at the times it was that bad, I always brought the belt with me if I needed it * * * I had a back belt * * * wide belt maybe a foot wide around my waist." The belt had been prescribed by the surgeon who had performed the laminectomies. The employee took Percodan and Robaxin[1] for pain and other pills that were not named specifically. He said that he took the pills "[o]nly when I needed it." Other days "when it acted up real bad, I take [the pills] so I wouldn't have to lose any time."

One day in July 1984, on a Friday, shortly before the period of disability in question began, the superintendent of the job noticed that Holme was unable to walk and directed him to go home. He "tried to stick it out" but left at two o'clock in the afternoon. He was not sure, however, that he would be able to drive home. (For about a year Holme had been working at a job in Medford, Massachusetts, driving daily between there and home in Cumberland, Rhode Island.)

The employee continued to have fairly constant back problems while working until the time in August 1984 when he was unable to return to his employment because of an increase in symptoms. He was not aware of any particular new injury while he was working. He had missed a few days in July 1984, but he did not relate that

absenteeism to any particular event. He did return to work feeling better. But on August 8, 1984, while at home, he experienced severe pain while trying to get up from a chair. The pain was so severe that he was taken by ambulance to the hospital where he was admitted for treatment. He has not worked since that time.

The attending physician, an orthopedic surgeon, testified through deposition. He was not the surgeon who had performed the surgery on Holme but was an associate of that physician. He was of the opinion that employee was totally disabled until March 14, 1985, at which time he was able to do sedentary work. The attending physician stated that Xrays taken at the beginning of the 1984 disability revealed "significant degenerative disc disease; that is the facet joints were somewhat arthritic and there was narrowing of the L4–5 disc space indicative of previous disc injury." He then diagnosed "degenerative disc disease of the lumbar spine and chronic low back pain syndrome."

The physician's testimony covered employee's progress from the initial examination in the hospital, at which point he was completely bedridden, to his being able to walk with the aid of a cane, then to his becoming sufficiently mobile to use the bathroom, then to his walking unassisted. His persistent pain, however, prompted the physician to refer employee to the Pain Clinic at Miriam Hospital. After evaluation there, he was not accepted for treatment because, as reported to the referring physician, Holme had become so acceptant of and adjusted to the pain that he was not a good candidate for pain therapy.

The real parties engaged in battle before the trial commissioner were not employer and employee but rather the two insurance carriers. The only issue presented to the trial commissioner was whether the period of disability that began in July 1984 resulted from a recurrence of the original injury, which would be the responsibility of the

1. Percodan is "a central-nervous-system, fixed-combination drug containing narcotic analgesics." Mosby's Medical, Nursing & Allied Health Dictionary, 899 (3d ed.1990).

Robaxin is a "skeletal muscle relaxant." *Id.* at 1039.

original insurer, or an aggravation of the chronic back problems that had resulted from the original injury and the surgery performed. The aggravation, of course, would be a new injury and the responsibility of the new insurer.

▪ We have had occasion to speak of the difference between an aggravation and a recurrence *for* purposes of evaluating a claim of workers' compensation benefits. "A recurrence is the reappearance of a work-related injury. * * * The employee, however, need not identify any precipitating factors, either work related or nonwork related, as the reason for the recurrence." *Mignone v. Shapewood Design, Inc.,* 525 A.2d 1297, 1300 (R.I.1987). There are two types of aggravation that are compensable. One type, not applicable to this case, occurs when an employee suffers a work-related injury that is aggravated by medical or surgical treatment. The second type of aggravation, the one alleged in this case, occurs when an employee is suffering from a pre-existing disease or infirmity and the current employment aggravates, or accelerates the condition or disease to produce a disability. *Id.* The employee must show merely that the employment aggravated the pre-existing condition. 1 Larson, *Workmen's Compensation Law* § 13.21 (1990).

The current insurer argued a finding of recurrence and the original insurer argued a finding of aggravation. Neither insurer nor employer disputed the fact that the period of disability in question was work related.

▪ The trial commissioner, after reviewing the evidence, reached the conclusion that employee suffered an aggravation of his pre-existing painful and chronic back condition. The aggravation resulted from the work he performed for The Carlson Corporation following his return to regular work after the 1977 injury. He found that employee was totally disabled from July 1, 1984, to March 13, 1985, and partially disabled thereafter and continuing to be partially disabled. Relying on these findings, the trial commissioner denied and dismissed employee's petition to review, which

would have required a finding of a recurrence. No appeal was taken from that decree.

On the second insurer's appeal, taken in the name of employer, the Appellate Commission reversed on the ground that there was insufficient evidence to prove either an aggravation or a recurrence. In its decision the Appellate Commission noted that employee could have joined the two insurance companies as parties to these petitions.

"The petitioner/employee in this situation was confronted with an unfortunate change in insurance carriers, each of whom was orchestrating its own defense of Holme's claim against Carlson to the strategic advantage of each insurer. [E]ach insurance carrier * * * was pointing to each other as the entity responsible for * * * payments for Holme's 1984 lack of work. The position of The Carlson [Corporation] itself * * * was never clearly established."

Neither employer nor either insurer ever maintained that employee's disability was not occupational in origin. In fact the Appellate Commission stated in its opinion that

"it is clear that this record does establish that on August 13, 1984 the petitioner was totally incapacitated for work, and the issue is whether that incapacity was a result of an aggravation or recurrence of his 1977 injury."

Nevertheless, in its decision, the Appellate Commission decided that employee had failed to meet his burden to prove his case by a fair preponderance of legally competent and probative credible evidence and made reference to *Mazzarella v. ITT Royal Electric Division,* 120 R.I. 333, 388 A.2d 4 (1978), and *McAree v. Gerber Products Co.,* 115 R.I. 243, 342 A.2d 608 (1975). We disagree.

Doctor Ira J. Singer, the attending physician and an orthopedic surgeon, testified that Holme was totally disabled for work when he initially examined him on August 13, 1984, at Miriam Hospital. By March 14, 1985, Holme was capable of doing sed-

entary work. The trial commissioner disregarded the testimony of an examining physician for the insurer who found no disability at all at the time of his examination in 1985.

On the matter of causation the trial commissioner stated

"Concerning the issue of recurrence or aggravation, Dr. Singer, after having received from both attorneys their summation of the facts presented during the course of this hearing * * * Dr. Singer's response was: 'In speaking of probability there is a higher probability that he could have gotten into this situation * * * by being involved occasionally with this type of heavier work than he would like to have done. However there is also a smaller probability that people with a previous injury and a more chronic problem could get an acute exacerbation without doing this.'"

*Mignone v. Shapewood Design, Inc.,* 525 A.2d at 1300, was a case in which the attending physician's testimony was "ambiguous at best." The physician refused to classify the employee's injury as either an aggravation or a recurrence. He said that he was unsure of the meanings of the words in a legal sense. But he did describe the nature of the employee's injury in a medical sense. We held in that case that the physician's testimony in conjunction with other evidence in the record was legally sufficient to support the Appellate Commission's finding that the employee's condition was a recurrence.

In the case before us the attending physician's testimony, while not so precise as one would like it to be, was more precise than that given in *Mignone* where the physician would give no opinion at all. Doctor Singer testified clearly about the greater probability of aggravation than recurrence. He based his opinion on the history he had obtained and on the work Holme had been doing before his July 1984 disability. His answer was given in response to questions by the insurance carriers' and the employee's counsel, which called for his opinion concerning whether the employee had suffered an aggravation or recurrence. He

gave his opinion in probabilities, not possibilities. In our opinion the posture of this case before the trial commissioner made such evidence probative and legally competent. When we consider this evidence in conjunction with the uncontradicted evidence of Holme's rather remarkable efforts to continue at work that appeared to be beyond his physical capabilities, we are of the opinion that there was adequate evidence to support the trial commissioner's finding of an aggravation that was work related and compensable. It was error, therefore, for the Appellate Commission to reverse the decree of the trial commissioner on the grounds that it stated.

For these reasons, the petition for the issuance of a writ of certiorari is granted, the final decree of the Appellate Commission is quashed, and the papers of the case are remanded to the Workers' Compensation Commission with our decision endorsed thereon.

KELLEHER, J., did not participate.