237 A.2d 555.

LEROY PERRON *vs.* ITT WIRE AND CABLE DIV. (formerly ROYAL ELECTRIC CORPORATION).

JANUARY 29, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an appeal from a final decree of the workmen's compensation commission, denying and dismissing an employee's original petition for compensation benefits.

The record compiled before the single commissioner establishes that petitioner, then thirty-four years of age, was employed by respondent as a maintenance helper on July 29, 1965, when he suffered a work-connected inflammation of the left wrist. His duties that day consisted mostly of operating a jackhammer which at one time stuck in the ground and required tugging and hauling to dislodge. Toward the end of the day, petitioner felt some pain in his left hand but thought nothing of it, believing that the tightening sensation that he was experiencing would correct itself.

Work stopped for the day at 4:15 and petitioner had been home about an hour when the wrist became swollen and so tightened that it could not be used. He telephoned respondent's safety manager who instructed him to go to the Memorial Hospital in Pawtucket for X-rays. There, petitioner was examined by Dr. Edward Spindell, whom petitioner had not previously known. Doctor Spindell diagnosed the condition of the left wrist as tenosynovitis and placed the wrist in a cast.

The following day petitioner reported for work, was examined by respondent's doctor and then resumed his duties as a maintenance helper, but was not required to operate a jackhammer.

He continued to work throughout the summer, during which time he remained under the care of Dr. Spindell. The latter, dissatisfied with petitioner's progress, in September requested respondent's permission to perform surgery. It further appears that at the age of four or five, petitioner had fractured his left wrist, and it was Dr. Spindell's opinion that residuals from this fracture were a condition contributing to petitioner's unsatisfactory response to treatment. Permission for surgery was denied by respondent, Dr. Byron R. Quinn, the plant physician, who was of the opinion that it was unnecessary. It is undisputed that the fracture of the left wrist which petitioner had sustained some thirty years earlier had given him no trouble at work or otherwise since his childhood.

In any event, Dr. Spindell arranged for petitioner to enter the Miriam Hospital November 28, 1965, and the following day resected the ulnar bone of and removed loose chips from the left wrist. This operation was performed November 29, 1965; petitioner had worked without interruption through November 27, 1965.

He was discharged from the hospital December 2, 1965. and returned to work December 14. He continued working for the next two days but experienced such pain that he

was forced to desist. Thereafter, December 22, 1965, he filed the instant petition for compensation benefits.

At hearings thereon before a single commissioner, all parties agreed that the condition tenosynovitis was work-connected, resulting from the use of a jackhammer. Doctors Spindell and Quinn who testified and Dr. John G. Pierik, an impartial medical examiner whose report was received in evidence, were all agreed that petitioner's incapacity for work resulted from the surgery.

The single commissioner found that petitioner on July 29, 1965 sustained the condition tenosynovitis in the course of his employment; that respondent had knowledge thereof, but that petitioner's incapacity for work resulted from the surgery which was performed to correct the old fracture, and he entered a decree accordingly. This decree, while denying compensation for loss of earning capacity and medical expenses, did award Dr. Spindell a witness fee of $50 and petitioner's counsel a fee of $175 in connection with the prosecution of the petition for benefits. From this decree petitioner appealed to the full commission.

On its review of the record compiled before the single commissioner, the full commission sustained his findings but reversed his award of witness and counsel fees. It entered a new decree denying and dismissing the petition on the grounds that since petitioner's incapacity for work resulted from the surgery which the full commission and the single commissioner had found not causally related to the work-connected tenosynovitis, the commission was without jurisdiction.

In his appeal from that decree, petitioner sets forth twelve reasons of appeal which, however, may be compressed into two assignments of error. In substance they are that the commission erred in finding that it was without jurisdiction to entertain the petition and that the finding that the surgery which incapacitated petitioner for work

was not causally related to the work-connected tenosynovitis.

The contentions made by petitioner in support of his reasons of appeal predicated on the commission's finding of no jurisdiction are without merit for the simple reason that they miscomprehend the import of the full commission's decision with regard to lack of jurisdiction.

In its decision disclaiming jurisdiction, the full commission cites and relies on *Medici* v. *United States Rubber Co.*, 72 R. I. 248, 50 A.2d 142 (1946), and *Denisewich* v. *Abbott Glass Co.*, 98 R. I. 182, 200 A.2d 455 (1964). The principle laid down in those cases apposite to the commission's decision is that where a work-connected injury does not result in incapacity for work, the workmen's compensation commission is without jurisdiction to award medical expenses and witness or counsel fees; the jurisdiction to make these awards in such a case being specifically vested in the director of labor by G. L. 1956, §28-33-9, as amended. Thus, we think it clear that the provision of the full commission's decree disclaiming jurisdiction relates to the full commission's reversal of the single commissioner's award of witness and counsel fees and does not represent a determination by the full commission that the single commissioner was without jurisdiction to hear the petition in the first instance. Considered in this light, the decision of the full commission set forth in its decree as disclaiming jurisdiction is correct, assuming, of course, that the commission was warranted in finding that the incapacity for work resulting from the surgery was not causally related to the tenosynovitis.

This brings us to a consideration of petitioner's contention advanced in support of his other reasons of appeal, namely, that the single commissioner and the full commission on review erred in finding that there was no causal relationship. Although we are bound by findings of fact made by the commission, which findings are supported by competent evidence, absent fraud, *Brown & Sharpe Mfg.*

*Co.* v. *Lavoie,* 83 R. I. 335, 116 A.2d 181 (1955), it is equally true that findings not so supported constitute an error of law. *Catoia* v. *Eastern Concrete Products Co.,* 84 R. I. 402, 124 A.2d 864 (1956).

In passing on an appeal from a final decree of the full commission, therefore, it is the duty of this court to examine the record for the purpose of determining whether the findings of fact set forth therein are supported by any competent evidence and, on the basis of such examination, sustain, modify or reverse the decree as circumstances may require. Applying this rule to the instant appeal, our examination of the record before us leads to the conclusion that the full commission misconceived the evidence on which its factual findings are predicated. Stated otherwise, we conclude that the commission's findings of fact are not supported by competent evidence.

It is agreed that the condition tenosynovitis arose out of and in the course of petitioner's employment, was connected therewith and referable thereto. It is the essence of Dr. Spindell's testimony that this work-connected injury failed to respond to the ordinary treatment prescribed in such cases and that the persistence of the tenosynovitis may or may not have resulted from residuals of the thirty-year-old fracture, but that in any event the surgery was performed to cure or relieve petitioner from the effects of the work-connected tenosynovitis.

The findings of the full commission that the surgery was performed to correct residuals of the thirty-year-old fracture which was causally unrelated to the work-connected injury implicitly reject Dr. Spindell's testimony. The rejection is predicated on the commission's conception of the testimony of Dr. Quinn, respondent's plant physician, and on the report of Dr. John G. Pierik, the impartial medical examiner.

The significant portion of the commission's decision in this regard is as follows:

"The major issue to be resolved is whether such sprain or condition required the operation and caused petitioner's disability for work.

"In studying and interpreting the testimony of Drs. Quinn and Pierik we are persuaded that petitioner's operation and incapacity for work were not due to the effects of such condition. We do not have to recite all the reasons given by these two doctors for their conclusions and opinions upon which we look so favorably. Suffice it to say that we are satisfied that petitioner worked for several months after such incident and neither doctor was of the opinion that such condition required surgery and caused his incapacity for work."

An examination of Dr. Pierik's report, however, discloses that he expressly declined to offer any opinion as to why the surgery was performed, stating, "* * * I cannot make a specific diagnosis as to what was the etiology of his difficulty prior to surgery." The report concluded with the opinion that any presently existing symptoms of incapacity for work resulted from the surgery. This conclusion was agreed to by Dr. Spindell. The issue for the commission's determination was whether there was a causal connection between the tenosynovitis and the surgery. On this issue, Dr. Pierik offered no opinion and his report was therefore without probative force on the ultimate question.

Doctor Quinn, on the other hand, testified that the thirty-year-old fracture had given petitioner no trouble until the onset of the tenosynovitis; that this latter condition was brought on by petitioner's use of the jackhammer, thus work-connected; but, that in his opinion surgery was not necessary to cure or relieve the work-connected inflammation. It was because Dr. Quinn was of the opinion that a less drastic course of treatment would cure or relieve the tenosynovitis that permission for surgery was refused.

However, specifically asked, "And you don't know whether in Dr. Spindell's opinion this was prolonging the tenosynovitis?", Dr. Quinn replied, "Apparently was, I don't think he would have operated on if he did."

Although the first portion of Dr. Quinn's response appears to be at variance with his concluding words, we think it clear that he was conceding that Dr. Spindell's opinion as to the advisability of surgery to cure or relieve the tenosynovitis was held in good faith.

Manifestly then, the divergence of opinions as expressed in the testimony of Dr. Spindell and Dr. Quinn goes not to the question of a causal relationship between the tenosynovitis and surgery. Rather, their differing opinions go to the course of treatment to be preferred in curing or relieving the work-connected tenosynovitis.

The workmen's compensation act is social legislation remedial in nature. *Beaudry* v. *United States Rubber Co.*, 88 R. I. 162, 143 A.2d 301 (1958). An injured employee is entitled to a physician or surgeon of his choice, G. L. 1956, §28-33-8, as amended, and submission in good faith to a course of treatment prescribed by the doctor of his choice in the interest of curing or relieving a work-connected injury establishes any incapacity for work resulting from such course of treatment as causally related to the work-connected injury.

This is not to say that incapacity is compensable when it results from a course of treatment which to the knowledge of the injured employee has been prescribed by a physician of his choice for the purpose of correcting a condition, the existence of which does not impede recovery from a work-connected injury.

There is no evidence, however, that such is the case here. Doctor Spindell's testimony is to the contrary and Dr. Quinn's testimony concedes good faith. Nevertheless, although not given significance by the full commission, respondent argues that the commission's findings of no causal relationship between the surgery and the work-connected tenosynovitis can be supported by Dr. Spindell's post-operative report which is in evidence as part of the record. It argues that this report is inconsistent with Dr. Spindell's

testimony before the single commission and can therefore serve to negate Dr. Spindell's testimony that residuals from the thirty-year-old fracture constituted a condition which was impeding petitioner's recovery from the work-connected tenosynovitis.

An examination of this report, however, discloses that it is not inconsistent with the doctor's testimony but is, rather, less informative. Regarding this, counsel for respondent asked Dr. Spindell if it were not true that the report made no mention of opening the sheath through which the tendons passed. Dr. Spindell replied, "No, it doesn't say in words but you can not make this approach without doing this. You have to do this automatically and there are some things like you don't have to describe in absolute detail on something that is relatively common and done frequently."

Clearly, there is nothing inconsistent about the report from which the inference could be drawn that Dr. Spindell did not operate to correct a condition which was impeding petitioner's recovery from his work-connected injury. There is not a scintilla of evidence that petitioner submitted to an incapacitating surgery which was not in good faith performed as a means of curing or relieving the tenosynovitis.

We hold, therefore, that the commission erred in finding that petitioner's incapacity was not causally related to his work-connected injury and, on the evidence before it, the commission should have made a determination as to the extent and duration of total and/or partial incapacity together with an award of compensation benefits, including witness and counsel fees, and lawful medical expenses. For this purpose, we remand the cause to the workmen's compensation commission for entry of a new decree conformable to such findings as it may make consistent with this opinion.

The petitioner's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Raul L. Lovett,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* of counsel, for respondent.