Patricia L. **POUDRIER**

v.

**BROWN UNIVERSITY.**

No. 99–285–M.P.

Supreme Court of Rhode Island.

Dec. 20, 2000.

Robert Smith Thurston, Stephen J. Dennis, Providence, for plaintiff.

Thomas R. Bender, Michael T. Wallor, Providence, for defendant.

BEFORE: WEISBERGER, C.J., BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on November 6, 2000, pursuant to the employee's petition for writ of certiorari seeking review of a decision by the Appellate Division of the Workers' Compensation Court that affirmed the denial by the trial judge of her petition for workers' compensation benefits. We directed the parties to appear and show cause why the issues raised in this petition should not be summarily decided. After hearing the arguments of counsel and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown. Therefore, we shall decide the case at this time.

### Facts and Travel

On September 11, 1997, Patricia L. Poudrier (employee or Poudrier) filed a petition in Workers' Compensation Court (WCC) seeking total disability compensation, partial disability compensation, and medical benefits, that alleges that she suffered from bilateral carpal tunnel syndrome, which she contended was the result of repeated keyboard usage at her place of employment, Brown University (university).[1] Poudrier worked in the university's registrar office, where her duties included dealing with the students, faculty and parents as well as entering the grades and academic information of every student from the undergraduate level through the medical school. For about five months before beginning work in the registrar's office, Poudrier worked in the university bookstore, where very little of her time involved the use of a computer. The employee testified that once she began in the registrar's office, she spent 95 percent of her work day at her keyboard. However, Charlotte Patten (Ms. Patten), her superior at the university, disagreed and testified that the actual time that employee spent at her keyboard was between 40 and

---

1. Poudrier had been diagnosed with diabetes when she was eight years old. Although she takes insulin to control her condition, she leads an otherwise normal and fully functional life.

50 percent. Ms. Patten did agree, however, that at various busy periods during the academic year, employee was required to spend about 95 percent of her day at the keyboard entering data very quickly and accurately. These busy periods were described as those times during the start of classes each semester, the period toward the end of each semester and especially toward the end of the school year during the graduation period.

In the early stages of the proceedings, employee filed a motion for an independent medical examiner to be appointed by the trial justice pursuant to G.L.1956 § 28-34-5.[2] The motion was renewed at a later point in the trial and was denied "without prejudice," to counsel renewing the motion at what the trial judge concluded a more appropriate time.[3] One reason for the denial of the motion was the feeling of the trial judge that employee had not established sufficient proof that she suffered an occupational disease.[4]

The WCC judge entered a decree on June 25, 1998, finding that employee "failed to demonstrate by a fair preponderance of the credible evidence that she sustained a work-related injury on July 22, 1997, arising out of or in the course of her employment with the [university] ***." The trial judge also found that the employee failed to demonstrate by a preponderance of the credible evidence that the bilateral carpal tunnel syndrome was caused by or connected with her work-related activities. A major factor in the trial court decision was medical testimony presented by the employee as well as the university. This testimony consisted of diagnoses made by doctors for both parties, the main contention being the length of time employee actually spent at the keyboard and whether the carpal tunnel syndrome was caused by employee's diabetes or by her keyboard work. The trial judge rejected the testimony of employee's experts on the ground that their opinions rested exclusively on employee's history indicating that her keyboard work comprised 95 percent of her work day.

At no time during these proceedings was an independent medical examiner appointed to examine employee. The employee filed a claim of appeal. On June 4, 1999, the WCC Appellate Division entered a final decree in this case that affirmed the findings of fact made by the trial judge on June 25, 1998. It is from this decree that employee seeks review from this Court.

### Discussion

The employee has articulated three arguments in support of her petition. First, she argued that the WCC committed reversible error by failing to grant her motion for the appointment of an impartial medical examiner. Second, she contended

2. General Laws 1956 § 28-34-5 provides:
   "**Examination and report by a physician.**— The court *shall appoint* one or more impartial physicians whose duty it shall be to examine *any claimant* under this chapter and to make a report in such form as the court may require." (Emphasis added.)

3. The exchange between the trial judge and employee's counsel was as follows:
   "Counsel: I think that your policy has been, even though I have argued with it on occasion, that in an occupational disease case that you would not appoint *** an impartial unless there was some proof that there was an occupational disease.
   "The Court: Or some substantial issue that it was, yes.
   "Counsel: Right. And now I have an affidavit which causally relates that. I think it's at a posture at this point to go ahead and appoint the impartial and that's what I'm requesting.
   "The Court: Okay. I'm taking the same position I did the last time, ***. I think that the motion to appoint an impartial at this point in time is premature. I will deny it without prejudice, again, giving you leave to renew—
   "Counsel: Okay.
   "The Court:—as we go along. I'm not going to suggest a point where you should renew, but as you feel it is necessary you may renew."

4. Section 28-34-1(3) defines an occupational disease as "a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment."

that the WCC erred in rejecting the opinions of Poudrier's physicians about the cause of her injuries based on an incorrect understanding of the physical demands of employee's job. The last argument put forth by Poudrier in this petition is the assertion that the WCC was in error when it denied employee's petition based on a failure to establish that employee had suffered a compensable occupational disease.

■ The law in Rhode Island is well settled that this Court's review of a decree of the Appellate Division of the WCC is limited to a determination of whether that tribunal erred in deciding questions of law. *Wehr, Inc. v. Truex*, 700 A.2d 1085, 1087 (R.I.1997). On certiorari, this Court does not weigh the evidence, but rather reviews the record to determine whether legally competent evidence supports the findings of the tribunal whose decision is under review, in this case, the Appellate Division. *Worcester Textile v. McIntosh*, 593 A.2d 70, 72 (R.I.1991). "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *K–Mart v. Whitney*, 710 A.2d 667, 668 (R.I.1998) (quoting *Wehr*, 700 A.2d at 1087–88).

■ The employee argued that the trial justice committed reversible error by refusing to appoint an impartial medical examiner pursuant to § 28–34–5. The Appellate Division found that the trial judge's failure to appoint an impartial medical examiner was not error because the motion for such an appointment was made before any evidence of an occupational disease was proffered and counsel's failure to renew the motion at a more appropriate time constituted a waiver. We disagree. The statute specifically states that the court "shall" appoint an independent medical examiner for "any claimant." This is of particular import considering the conflicting testimony of the doctors involved in the case and that the WCC judge found that employee's claim failed based upon this testimony. The statute does not afford the trial judge any discretion with respect to whether or not an impartial medical examiner will be appointed in cases in which the alleged disability is the result of an occupational disease or condition.

■ We deem the requirement to appoint an impartial medical examiner in these cases to be mandatory. An invitation for employee to renew her motion for appointment of such an examiner does not satisfy the statute and counsel's failure to renew such a motion after the initial rejection does not constitute a waiver, as a matter of law. It is clear that a factual dispute about the amount of time employee spent at her keyboard was an essential issue in this dispute. However, if the keyboard use is the principal cause of employee's injury, she is entitled to recover regardless of the length of time spent at the keyboard. Because the statute contemplates the guidance of independent medical testimony, the judge clearly could have benefited from such testimony and erred in rejecting the employee's medical testimony purely because of a variance in the percentage of time spent at the keyboard. For these reasons, we conclude that the Appellate Division erred in deciding a question of law. Accordingly, we vacate the decree of the Appellate Division with respect to employee's first claim. In light of our determination on this issue, we need not address the other issues raised by employee at this time.

For the reasons set forth above, the employee's petition for certiorari is granted, the decree of the Appellate Division of the Workers' Compensation Court is quashed. We remand the case to the Workers' Compensation Court for a new trial. The papers in this case may be remanded to the Workers' Compensation Court with our decision endorsed thereon.

Justice LEDERBERG did not participate.