**Dorene [1] TAVARES**

v.

**ARAMARK CORPORATION.**

**No. 2002–160–M.P.**

Supreme Court of Rhode Island.

March 4, 2004.

---

1. The plaintiff's name is also spelled "Doreen" in several trial court documents.

Kenneth D. Haupt, for Plaintiff.

Susan Pepin Fay, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

WILLIAMS, Chief Justice.

In this case we review a decree of the Appellate Division of the Workers' Compensation Court (Appellate Division) affirming Dorene Tavares's (plaintiff) petition to resume collecting weekly indemnity

benefits based on incapacity related to her earlier injury. The defendant, Aramark Corporation (defendant), contends the Appellate Division's decision was not supported by legally competent evidence. For the reasons indicated herein, we affirm the decree of the Appellate Division.

## I

### Facts and Travel

The plaintiff was employed as a food prep worker and cashier in a high school cafeteria. As cashier, one of plaintiff's responsibilities was to set up a table and position a cash register on top of the table. On October 29, 1996, plaintiff was positioning the table and register when the register, which weighed sixty to seventy pounds, started to fall off the table. As plaintiff leaned over to steady the register, she immediately felt a pull in her back. The plaintiff's injury was identified as a back sprain, and she began receiving treatment from Dr. Leslie Stern (Dr. Stern), a neurosurgeon, in mid-February 1997. On February 27, 1997, plaintiff left employment as a result of her injury. Pursuant to a Memorandum of Agreement dated September 4, 1997, plaintiff began receiving weekly benefits for partial incapacity. The plaintiff's benefits were terminated on May 14, 1998, when a pretrial order was entered in the Workers' Compensation Court finding that plaintiff's period of incapacity had ended. Despite this finding, plaintiff did not return to work.

The plaintiff's pain worsened and she continued to receive treatment from Dr. Stern. Several Magnetic Resonance Imaging (MRI) tests indicated minor degenerative changes in plaintiff's back, and Dr. Stern prescribed physical therapy, medication, and a rigid back brace, all of which failed to end plaintiff's pain. After these unsuccessful attempts to cure plaintiff, Dr. Stern ordered several diagnostic tests.

None of these tests, however, definitively diagnosed the cause of plaintiff's pain. Doctor Stern eventually became convinced that a discetomy would alleviate her pain; in his surgical report, Dr. Stern stated he found a herniated disc. In December 1999, plaintiff had an appointment, which was scheduled at defendant's request, for an impartial examination with Dr. A. Louis Mariorenzi (Dr. Mariorenzi). The plaintiff failed to keep this appointment, and underwent surgery with Dr. Stern on February 7, 2000.

Several weeks after the surgery, plaintiff's pain returned. She then filed a petition to review her incapacity with the Workers' Compensation Court. This time, however, plaintiff sought benefits for total rather than partial incapacity. During a bench trial with the Workers' Compensation Court, Dr. Mariorenzi testified that the results of the diagnostic tests performed on plaintiff all were within normal limits, and did not indicate a need for surgery. Doctor Mariorenzi's testimony conformed to Dr. Stern's deposed testimony that the tests were within normal limits, and that he proceeded with the surgery in spite of these results.

The trial judge found that plaintiff suffered a recurrence of her incapacity resulting from her original workplace injury as a result of the surgery. The trial judge also found that the surgery was not necessary to cure, relieve or rehabilitate plaintiff's original injury, but that plaintiff agreed to undergo surgery in good faith reliance on the advice of Dr. Stern. Based on plaintiff's good faith reliance on Dr. Stern's recommendation, the trial judge granted plaintiff's petition and awarded benefits for total incapacity from the date of surgery on February 7, 2000 and continuing, but denied plaintiff reimbursement for Dr. Stern's services relating to the surgery. The defendant appealed to the Appellate

Division, which affirmed the trial judge's decision. This Court granted defendant's petition for a writ of certiorari, and we now affirm the decree of the Appellate Division.

## II

### Standard of Review

■ It is well settled "that this Court's review of a decree of the Appellate Division of the [Workers' Compensation Court] is limited to a determination of whether that tribunal erred in deciding questions of law." *Poudrier v. Brown University*, 763 A.2d 632, 635 (R.I.2000). "On certiorari, this Court does not weigh the evidence, but rather reviews the record to determine whether legally competent evidence supports the findings of the tribunal whose decision is under review, in this case, the Appellate Division." *Id.* "If legally competent evidence exists in support of the factual findings of the Appellate Division, those findings are binding upon this [C]ourt, and the decree of the Appellate Division must be sustained." *Id.* (quoting *K–Mart v. Whitney*, 710 A.2d 667, 668 (R.I.1998)).

## III

### Causal Relationship

■ To collect workers' compensation benefits, an employee must demonstrate that an incapacitating injury is causally related to his or her job-related duties. *See Lomba v. Providence Gravure, Inc.*, 465 A.2d 186, 188 (R.I.1983). In workers compensation cases, the standard to prove "causal relationship" is not the same as finding proximate cause in negligence actions. *Mulcahey v. New England Newspapers, Inc.*, 488 A.2d 681, 684 (R.I.1985). The "causal relationship" standard is less exacting than what is required for proximate cause. Proximate cause "is estab-lished by showing that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 288 (R.I.1999). Causal relationship, however, is established if the conditions and nature of the employment merely contribute to the injury. *Mulcahey*, 488 A.2d at 684.

■ To prove "a recurrence of incapacity claim based on a 'return' of a prior incapacity * * * [t]he employee must establish a relationship or a 'nexus' between his or her previous incapacity and the alleged recurrence." *LaFazia v. D. Moretti Sheet Metal Co.*, 692 A.2d 1206, 1210 (R.I.1997). To meet this burden, the employee must present "medical evidence testimony * * * that persuades the trial judge that the employee is once again incapacitated and that the incapacity is causally related to the earlier compensated injury * * *." *Grant v. Leviton Manufacturing Co.*, 692 A.2d 685, 687–88 (R.I. 1997). Alternatively, the "submission in good faith to a course of treatment prescribed by the doctor of [an injured employee's] choice in the interest of curing or relieving a work-connected injury establishes any incapacity for work resulting from such course of treatment as causally related to the work-connected injury." *Perron v. ITT Wire and Cable Div.*, 103 R.I. 336, 343, 237 A.2d 555, 559 (1968).

■ The defendant asserts that the Appellate Division erred as a matter of law in concluding that the recurrence of plaintiff's incapacity after the surgery on February 7, 2000, was causally related to her compensable 1996 workplace injury. According to defendant, plaintiff is unable to establish the required causal relationship because her incapacity was found to have been the result of a surgery that was not necessary to correct her 1996 injury. The

plaintiff counters that her submission in good faith to the surgery recommended by Dr. Stern establishes the necessary causation.

In *Perron,* this Court considered the significance of an employee's reliance on his treating physician's recommendation that he undergo surgery. *Perron,* 103 R.I. at 342–43, 237 A.2d at 559. The plaintiff in *Perron* became incapacitated after surgery for a work-related wrist injury. *Id.* at 341, 237 A.2d at 558. Although there was no serious dispute between the plaintiff's doctor and the defendant's doctor over the "causal relationship between the [work-connected injury] and surgery," each party's doctor disputed "the course of treatment to be preferred in curing or relieving the work-connected" injury. *Id.* at 343, 237 A.2d at 559. The plaintiff's doctor recommended surgery, but the defendant's doctor opined that a less drastic course of treatment would cure or relieve the plaintiff's injury. *Id.* at 342–43, 237 A.2d at 559. We held, however, that even if not absolutely necessary, the surgery did not sever the causal relationship between the plaintiff's post-surgery incapacity and his work-connected injury. Rather, the "submission in good faith to a course of treatment prescribed by the doctor of [an injured employee's] choice in the interest of curing or relieving a work connected injury establishes any incapacity for work resulting from such course of treatment as causally related to the work-connected injury." *Id.* at 343, 237 A.2d at 559.

We are of the opinion that *Perron* is controlling in this case. The Appellate Division affirmed the trial judge's finding that plaintiff "suffered a recurrence of incapacity as of the time she went under the knife at the hand of Dr. Stern," a and that the recurrence was causally related to plaintiff's 1996 workplace injury. The Appellate Division also affirmed the trial

judge's finding that the surgery was not necessary to cure, relieve or rehabilitate plaintiff's injury. As in *Perron,* however, plaintiff was found to have submitted in good faith to the advice of her treating doctor. *Perron,* 103 R.I. at 343, 237 A.2d at 559. Therefore, plaintiff is not required to establish the absolute necessity of the debilitating surgery. Instead, plaintiff can prove causal connection with evidence that she submitted "in good faith to a course of treatment prescribed by the doctor of [her] choice in the interest of curing or relieving a work-connected injury." *Id.* Thus, as in *Perron,* plaintiff has demonstrated the requisite causal connection based on her good faith reliance on Dr. Stern. Upon a thorough review of the record, it is apparent that the Appellate Division's finding about plaintiff's good faith reliance on Dr. Stern is fully supported by legally competent evidence. Consequently, that finding is binding on this Court. *Poudrier,* 763 A.2d at 635. We sustain the Appellate Division's finding that a nexus exists between plaintiff's original injury and her post-surgery incapacity.

The defendant asserts that *Perron* does not allow the substitution of good faith reliance for affirmative medical evidence to establish a causal relationship. To support this argument, defendant asserts that the finding of a causal relationship in *Perron* depended in part on the existence of medical evidence, namely the testimony of the plaintiff's doctor, supporting such a relationship. In finding that a causal relationship existed, however, this Court did not rely on the medical evidence. *Perron,* 103 R.I. at 343, 237 A.2d at 559–60. Instead, this Court explicitly relied on the plaintiff's "submission in good faith to a course of treatment prescribed by the doctor of his choice." *Id.* at 343, 237 A.2d at 559.

The defendant further contends that Dr. Stern did not hold a good faith belief that the surgery performed was necessary to treat plaintiff's work related injury. Thus, defendant argues that Dr. Stern's supposed bad faith undermines the causal relationship between plaintiff's workplace injury and her incapacity after surgery. As in *Perron*, "[t]here is not a scintilla of evidence that * * * [the] surgery * * * was not in good faith performed" by Dr. Stern to cure or relieve plaintiff's injury. *Perron*, 103 R.I. at 344, 237 A.2d at 560. Here, the Appellate Division noted that "the trial judge rejected the opinion of Dr. Stern that the surgery was necessary * * *," and found that Dr. Stern made an "error in judgment" in deciding to operate on plaintiff. This does not amount to a finding that Dr. Stern did not believe surgery would correct plaintiff's injury. However imprudent Dr. Stern's decision to operate on plaintiff may have been, there is no evidence that Dr. Stern acted in bad faith.

 The defendant also argues that, if this Court perceives a causal connection between plaintiff's workplace injury and her incapacity after surgery based only on plaintiff's good faith reliance on Dr. Stern, then defendant essentially would become a "general insurer" of plaintiff's health. We disagree. Our holding merely promotes our recognition that the Workers' Compensation Act "is designed to protect employees who have all types of beliefs and fears." *Guilmette v. Humble Oil & Refining Co.*, 114 R.I. 508, 513, 336 A.2d 553, 555 (1975). As the Appellate Division pointed out,

> "[j]ust as an employee who reasonably refuses to undergo surgery due to fear of the risks involved * * * continues to receive compensation benefits, an employee who decides to undergo surgery recommended by her treating physician

should be protected from the results of that surgery so long as it is intended to treat the effects of the original work-related injury."

As a policy matter, a patient should not be held responsible for his or her treating physician's errors in judgment. The plaintiff was entitled to rely on Dr. Stern's judgment, and was not obliged to assess the quality of his medical decisions.

Furthermore, plaintiff may not rely on good-faith reliance with respect to anyone she chooses aside from her treating physician to establish a causal relationship. Instead, *Perron* clearly dictates that only plaintiff's good faith reliance on her treating physician, in this case, Dr. Stern, is sufficient to establish a causal relationship between a workplace injury and subsequent incapacity. *Perron*, 103 R.I. at 343, 237 A.2d at 559.

 Additionally, defendant contends that, because the surgery was not medically necessary, plaintiff's incapacity after the surgery is not compensable. We disagree. The evidence clearly shows that plaintiff's workplace injury led to her surgery, which caused her total incapacity. We are satisfied that but for her workplace injury, plaintiff would not have undergone surgery. Consequently, plaintiff's incapacity after surgery is causally related to her original workplace injury regardless of whether the surgery was medically necessary. When a workplace injury is aggravated by surgical treatment, the aggravation is compensable as a consequence of the original workplace injury. *Lisi v. Warren Oil Co.*, 601 A.2d 956, 959 (R.I. 1992); *Lomba*, 465 A.2d at 188. By logical extension, so, too, is the recurrence of an earlier workplace injury.

## IV

### G.L.1956 § 28–33–34

General Laws 1956 § 28–33–34 provides: "The employee shall, after an injury, * * *

if so requested by his or her employer, submit himself or herself to an examination by a physician \* \* \* in cases where the employee has received compensation for a period of more than three (3) months." Obviously, § 28–33–34 requires an employee to "submit to an examination by an employers physician if requested to do so." *DeMarco v. M.A. Gammino Construction Co.*, 492 A.2d 835, 837 (R.I.1985).

■ The defendant asserts that it was prejudiced because plaintiff failed to attend the impartial scheduled examination with Dr. Mariorenzi in December 1999. Thus, defendant asserts this Court should deny plaintiff benefits. In *DeMarco*, an employee failed to attend an examination scheduled at the request of his employer. *DeMarco*, 492 A.2d at 836. The point in the litigation at which the employer scheduled the examination, however, was such that the examination would not have produced "useful medical evidence in order for employer to be heard on a claim that it was prejudiced by employee's failure to submit to an examination." *Id.* at 837. Because the employer was not prejudiced by the employee's failure to attend the examination, this Court refused to dismiss the employee's petition for review. *Id.*

The plaintiff received benefits for more than three months, and, therefore, was required under § 28–33–34 to attend the examination with Dr. Mariorenzi. Just as the employer in *DeMarco* was not prejudiced by the employee's missed examination, defendant here was not prejudiced by plaintiff's failure to keep her appointment with Dr. Mariorenzi. Based on a review of plaintiff's medical records, Dr. Mariorenzi offered his opinion at trial about the necessity of plaintiff's surgery. Even if Dr. Mariorenzi had examined plaintiff, he could not have stopped her from following Dr. Stern's advice to undergo surgery. From defendant's perspective, the most

that could have been gained by such an examination was evidence to demonstrate that the surgery was not medically necessary. In the end, the trial judge accepted Dr. Mariorenzi's opinion that the surgery was not medically necessary, and rejected Dr. Stern's opinion to the contrary that it was. Thus, it is unlikely that defendant would have obtained additional useful medical evidence had plaintiff attended the examination.

## V

### G.L.1956 § 28–33–38

■ The defendant also argues that because plaintiff violated § 28–33–38 she should forfeit the benefits awarded to her by the trial judge. Section 28–33–38 provides: "If any employee refuses to submit himself or herself for any examination provided for in chapters 29—38 of this title \* \* \* his or her rights to compensation shall be suspended and his or her compensation during that period of suspension *may* be forfeited." (Emphasis added.) By using the term "may," the General Assembly endowed the trial judge with discretion to decide whether an employee will forfeit benefits. The trial judge, therefore, acted within his discretion when he chose not to order plaintiff to forfeit her benefits, and, instead, assessed a "no show" fee against plaintiff and denied her reimbursement from defendant for the cost of her surgery. The plaintiff has failed to convince us that the Workers' Compensation Court abused its discretion in failing to order forfeiture of plaintiff's benefits.

The trial judge, moreover, did not have the ability to suspend plaintiff's benefits. A suspension of benefits under § 28–33–38 would apply only "during the period" in which plaintiff refused to submit to the examination. *See Saccoccio v. Kaiser Alu-*

*minum & Chemical Corp.*, 107 R.I. 53, 57, 264 A.2d 905, 907 (1970) (applying § 28–33–38 to suspend the plaintiff's benefits during the period of the plaintiff's refusal to attend an appointment with the employer's physician). Because plaintiff's benefits were terminated after the pretrial order dated May 4, 1998, plaintiff was not receiving workers' compensation during the December 1999 period of refusal. As a result, there were no benefits available for suspension under the statute.

## VI

### Total Incapacity

 The defendant asserts that there is no competent medical evidence in the record to support the trial judge's findings that plaintiff was totally incapacitated as a result of the surgery and that the Appellate Division, therefore, committed reversible error in affirming the award. It is well settled that the employee bears the burden of producing competent evidence to support her petition for benefits. *Meketsy v. Roger Williams Foods*, 526 A.2d 1276, 1277 (R.I.1987). When the employee seeks benefits for total incapacity, she bears the burden of demonstrating that "as a result of the injury, [she] is physically unable to earn any wages in any employment * * *." Section 28–33–17(b)(2). The trial judge evaluates the testimony of any witnesses, and "may reject some or all of the witness's testimony as being unworthy of belief. Such an evaluation is a finding of fact that, if supported by competent evidence, is binding." *Buonauito v. Ocean State Dairy Distributors, Inc.*, 509 A.2d 988, 991 (R.I.1986).

To support its argument, defendant notes that the only evidence of plaintiff's post-surgery capacity for work is Dr. Stern's testimony. According to defendant, because the trial judge rejected Dr. Stern's testimony on the medical need for plaintiff's surgery, the doctor's testimony on plaintiff's incapacity after the surgery lacks credence and is otherwise unworthy of belief. *See McAree v. Gerber Products Co.*, 115 R.I. 243, 256, 342 A.2d 608, 615 (1975) (stating that uncontroverted testimony is binding on the Workers' Compensation Commission unless it contains inherent contradictions or lacks credence or is unworthy of belief).[2]

The trial judge was responsible for evaluating Dr. Stern's testimony, and was entitled to either accept or reject the testimony in whole or in part. *Buonauito*, 509 A.2d at 991. Thus, the trial judge was permitted to reject Dr. Stern's testimony about the medical need for the plaintiff's surgery, and to accept Dr. Stern's testimony about the plaintiff's incapacity after the surgery. This "evaluation is a finding of fact, that, if supported by competent evidence, is binding." *Id.* Upon a thorough review of the record, this Court finds that Dr. Stern's testimony, as well as the plaintiff's testimony about her own incapacity, constitutes legally competent evidence sufficient to support the Appellate Division's findings.

### Conclusion

The decree of the Appellate Division awarding the plaintiff benefits for total incapacity commencing February 7, 2000, is affirmed. The papers in this case shall be remanded to the Workers Compensation Court.

FLANDERS, Justice, dissenting.

Because I believe that the Workers' Compensation Court erred as a matter of

2. Before 1990, disputes over workers' compensation benefits were heard and decided before the Workers' Compensation Commission. In 1990, the Legislature created the Workers' Compensation Court, replacing the Workers' Compensation Commission.

law when it permitted this employee to recover benefits for an alleged recurrence of an incapacity to work, I would quash the decision of the Appellate Division and remand this case to the Workers' Compensation Court with instructions for it to enter judgment in favor of the employer.

In this case, no competent evidence showed that the employee's post-surgical incapacity to work bore any causal relationship to her previous work-related injury. On the contrary, the evidence that the trial court accepted indicated that the employee's incapacity to work arose from her treating doctor's decision to perform unnecessary surgery on her nearly two years after her incapacity to work had ended. Even if the employee had relied in good faith on her treating doctor's advice to undergo this surgery—and the evidence suggests that she did not do so—this reliance, in and of itself, would be insufficient to establish a causal relationship between her resulting incapacity and her original work-related injury, especially in the absence of any evidence showing that her original injury created the putative need for this surgery. Given that the Workers' Compensation Court previously determined that her incapacity to work had ended, the employee's post-surgical incapacity was not compensable absent some showing of a causal nexus between that incapacity and her original injury. But the employee introduced no competent evidence to establish such a nexus. On the contrary, the trial judge rejected the testimony of the employee's treating physician on this issue and accepted the employer's medical evidence indicating that the employee's subsequent complaints did not incapacitate her from work until she underwent the unnecessary surgery.

The employee suffered her work-related injury on October 29, 1996. Shortly thereafter, she began collecting workers' compensation benefits for partial incapacity. On May 14, 1998, however, the Workers' Compensation Court entered a pretrial order finding that her incapacity for work had ended. Because the employee did not pursue this issue further, this order became final. Nevertheless, even though her incapacity for work had ended, plaintiff said that she still was experiencing pain; as a result, in 1999, her treating physician recommended surgery. But when the employer's physician scheduled an appointment to examine her, the employee failed to keep the appointment, fearing that the employer would not agree to the surgery. Nevertheless, on February 2, 2000, the employee's treating physician performed surgery on the employee's back, after which her condition worsened, causing her to experience pain that was even greater than what she said she had suffered before the surgery. Eventually, a trial judge in the Workers' Compensation Court found that the employee suffered a recurrence of her incapacity for work. But in doing so, he rejected the testimony of the employee's treating physician that the surgery was required to treat the effects of her original injury. Instead, the court accepted the testimony of the employer's physician that the surgery was unnecessary.

An injured employee seeking to recover workers' compensation benefits for an alleged recurrence of an incapacity to work bears the burden of proving that the incapacity has increased or returned by introducing evidence showing a relationship or nexus between the previous injury and the alleged recurrence of an incapacity to work. *See LaFazia v. D. Moretti Sheet Metal Co.*, 692 A.2d 1206, 1208 (R.I.1997) (citing G.L.1956 § 28–33–20.1(b)); *see also Grant v. Leviton Manufacturing Co.*, 692 A.2d 685, 687–88 (R.I.1997). The employee satisfies this burden by proving that he or she "is once again incapacitated and that the incapacity is causally related to

the earlier compensated injury." *Grant,* 692 A.2d at 688. "When determining whether the employer is liable for the subsequent period of disability, the sole question to be answered is whether the new period of disability is related to the original compensable injury." George E. Healy & Maureen H. Aveno, *Professional Guide for Attorneys, Physicians and Other Health Care Practitioners, Guidelines for Cooperation* at 6 (Sept. 2003) (hereinafter Healy & Aveno). But this employee failed to produce the requisite evidence demonstrating a recurrence of her incapacity to work because she did not introduce competent evidence showing a causal relationship between her work-related injury on October 29, 1996, and her post-surgical incapacity that she experienced four years after injuring herself. Instead, the evidence showed that whatever incapacity she suffered after undergoing surgery in February 2000 was caused not by her previous work-related injury in 1996 but by her unwarranted decision to undergo the surgery itself, based solely on the erroneous recommendations of her treating physician. Although the employee said that she was experiencing pain before the surgery, the uncontroverted evidence at trial showed that she intentionally refused to keep her appointment with the employer's physician, and thereby thwarted any pre-surgery opportunity for the employer to ascertain whether a causal nexus existed between her previous work injury and the employee's putative need for surgery. Instead of establishing a causal relationship, the evidence at trial demonstrated that the unnecessary surgery, not the original work injury, caused her current incapacity. Therefore, the employee did not satisfy her burden of proving a compensable recurrence of her incapacity to work.

Nevertheless, the majority affirms the award to this employee of workers' compensation benefits, reasoning that her good-faith reliance on her treating physician's advice to undergo surgery somehow sufficed to provide a causal nexus between the previous work injury and her post-surgical incapacity to work. To support this conclusion, the majority relies upon *Perron v. ITT Wire and Cable Div.,* 103 R.I. 336, 343, 237 A.2d 555, 559 (1968), which says that:

> "An injured employee is entitled to a physician or surgeon of his choice * * * and submission in good faith to a course of treatment prescribed by the doctor of his choice in the interest of curing or relieving a work-connected injury establishes any incapacity for work resulting from such course of treatment as causally related to the work-connected injury."

Applying *Perron* to this case, the majority holds that the requisite causal relationship existed because the employee relied in good faith on her doctor's recommendation that her condition necessitated surgery. But here, unlike *Perron,* the employee's incapacity for work had ended before the surgery occurred and no competent evidence showed that, before the employee underwent surgery, the incapacity had returned or recurred or that the original injury required surgical treatment.

Thus, the facts of *Perron* are readily distinguishable from this case. In *Perron,* 103 R.I. at 337, 237 A.2d at 556, the employee suffered a work-related injury. After this injury failed to heal in a timely fashion, plaintiff's treating doctor suggested surgery, believing that a previous wrist fracture was hindering plaintiff's recovery. *Id.* at 338, 237 A.2d at 557. The employer's doctor, however, denied permission for this surgery, deeming it unnecessary. *Id.*

Unlike this case, *Perron* did not involve a situation in which the employee's incapacity for work ended before the surgery occurred. In *Perron,* both doctors agreed

that the employee's initial injury was work related, and that this initial injury caused him to be at least partially incapacitated from work. *See Perron,* 103 R.I. at 338, 343, 237 A.2d at 556–57, 559. Their opinions differed *only* as to whether surgery constituted an appropriate course of treatment for the injury in question. As the *Perron* Court aptly noted, "the divergence of opinions * * * goes *not* to the question of a causal relationship between the [work injury] and surgery. Rather, [the] differing opinion[s] go to the course of treatment to be preferred in curing or relieving the work-connected [injury]." *Id.* at 343, 237 A.2d at 559. (Emphasis added.)

In this case, however, the treating doctor and the employer's doctor disagreed about whether plaintiff's pre-surgical condition had anything to do with her work-related injury or whether it constituted mere subjective complaints that were unrelated to the original injury. "The basic question which must be answered by the expert witness is whether the work-related injury is a substantial contributing factor to the development of the present disability." Healy & Aveno, at 6–7. Here, the trial judge rejected the employee's expert medical evidence and believed the employer's physician, who concluded that the employee's complaints were subjective and did not show any recurrence of an incapacity to work. Therefore, unlike the *Perron* doctors, the parties' physicians in this case did not merely disagree on the course of treatment, but also on whether any causal relationship existed between the need for surgery and the employee's previous work-related injury. The employer's doctor disagreed with the employee's treating physician and believed that surgery was not necessary to cure, relieve, or rehabilitate the employee from the injury she sustained at work in 1996. Her incapacity for work ended in 1998 and no competent evidence showed that she had reinjured

herself or that her incapacity for work had recurred before the surgery itself incapacitated her.

Furthermore, according to the employer's physician, no diagnostic evidence revealed any type of structural damage or permanent change in the employee's back as a result of her 1996 work injury. Indeed, consistent with the finding of the Workers' Compensation Court on May 14, 1998, that the employee's incapacity for work had ended, the diagnostic tests revealed no return or recurrence of any incapacitating injury. Thus, unlike *Perron,* the physicians in this case disagreed about the causal relationship between the employer's work injury and the cause of the incapacity that resulted after her surgery on February 2, 2000. Moreover, the trial justice rejected the testimony of the employee's physician as incredible and accepted the evidence presented via the testimony of the employer's physician.

In addition, the evidence indicated that, unlike the employee in *Perron,* this employee did not proceed in good faith when she relied on her treating doctor's belief that her condition necessitated surgery. Instead, the evidence showed that she actively attempted to conceal the surgery from her employer until it was a *fait accompli.* To accomplish this deception, she intentionally failed to keep her pre-surgery appointment with the employer's doctor because she knew that he would conclude that surgery was unnecessary and she did not "want him to cancel the surgery." In addition, rather than requesting the employer to pay for the cost of the surgery, she paid for it herself. Thus, her conduct in attempting to conceal her plans for surgery from the employer undermines the majority's conclusion that she possessed the requisite good-faith belief that the surgery was warranted.

Finally, *Perron* not only requires good faith on the part of the employee, but also the treating physician. *Perron,* 103 R.I. at 343, 237 A.2d at 559 ("Dr. Spindell's opinion as to the advisability of surgery to cure or relieve the [work injury] was held in good faith."). Here, I can hardly construe the treating doctor's decision to perform surgery as having been made in good faith when the trial judge characterized the decision as "reckless" and referred the matter to the Medical Advisory Board. Therefore, for all these reasons, *Perron* does not control the result in this case.

In sum, the majority's opinion allows employees to prove a recurrence of an alleged incapacity to work without showing a causal relationship between the incapacity and the original work-related injury. Henceforth, it is now sufficient for an injured employee to simply allege that his or her recurrence of incapacity resulted from good-faith reliance on a treating doctor's advice. This is true even if, as here, the employee deliberately concealed information about his or her medical condition from the employer's doctor before undergoing the surgery in question, and even if, as here, no competent medical evidence established a causal nexus between the original injury and the recurrence of an incapacity for work.

Because this result and the court's reasoning is inconsistent with the applicable workers' compensation law, I respectfully dissent.